THE CHATHAM CORPORATION *v.* BELTRAM, ET AL.

[No. 99, September Term, 1968.]

*Decided March 7, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, FINAN, SINGLEY and SMITH, JJ.

*Lewis Straughn Nippard,* with whom was *Cornelius F. Sybert, Jr.,* on the brief, for appellant.

*James S. Ansell* for appellees.

SMITH, J., delivered the opinion of the Court.

This apparently is yet another skirmish in the battle between "David" Beltram and "corporate Goliath" Chatham Corp.[1]

Appellant (Chatham) filed a petition with the Board of County Commissioners of Howard County asking that 6.74 acres of its land be reclassified from an R-20 (single family resi-

---

1. See *The Chatham Corp. v. Beltram,* 243 Md. 138, 146, 220 A. 2d 589 (1966) for the origin of these appellations.

dential) zoning district to an R-A-1 (Garden Apartment) zoning district. The tract is a part of a larger tract owned by Chatham located north of U. S. Route 40 and west of the intersection of Route 40 and St. John's Lane in the Second Election District of Howard County.

Reclassification was approved by the County Commissioners by a 2-1 vote. Appellees Peter Beltram and Jane Hahn (herein collectively referred to for convenience as "Beltram") appeared in opposition to the petition. Thereafter they filed their bill of complaint in the Circuit Court for Howard County seeking nullification of the reclassification on the grounds that the act of the board was capricious, arbitrary and illegal. Judge Macgill found in favor of Beltram. This appeal followed. We affirm the action of Judge Macgill.

Mr. Beltram and Mrs. Hahn each own homes within the subdivision of which the subject land is a part. They acquired their land from Chatham. Mr. Beltram testified that his home is on a hill and that he can see the subject property from his home. He thinks he is located approximately 1000 feet from the property. He testified that in his opinion the construction of the proposed apartments would depreciate his property by several thousand dollars "because the appeal of the neighborhood is the fact that it is a low density neighborhood and building apartments would reduce this prestige and therefore reduce the property value". The president of Chatham testified that the Beltram lot was about 1400 feet away.

Mrs. Hahn testified that her property was about 1000 feet from the subject property and that she could see it from the rear of her home. She believed the rezoning would depreciate the value of her property to the extent of $300.00 to $3000.00 because the construction of the apartments would cause a tremendous influx of people and traffic.

The property of Mrs. Hahn is separated from the nearest point of the subject property by four lots and a development road. The property of Mr. Beltram is somewhat farther removed.

The majority of the County Commissioners found "substantial change" in the area, stating:

"The Board has carefully considered the property,

the general neighborhood, and has considered all of the evidence including the testimony, exhibits and data presented to it. It feels that inasmuch as this land is a long narrow strip with a depth of some 150 feet and is between existing RA-1 zoning and the proposed street extensions of Paulskirk and Ramblewood Roads, it appears that such a reclassification is neither incompatible nor inconsistent with the remainder of the areas in this residential district and if granted would be more harmonious with the proper and orderly growth of the entire area especially when considered with the adjacent areas zoned for shopping center and garden apartment uses. We feel that this is a more logical and appropriate use of the property and will not adversely affect vicinal properties but to the contrary tend to conserve and stabilize property values in the area. In our opinion, the granting of this rezoning will open North Chatham Road and solve a serious traffic problem for St. Paul's Catholic Church. The advent of sewage [*sic*] in this area changes the characteristics of this property and surrounding area. This to us is a substantial change."

Chatham had two witnesses before the County Commissioners, Mr. Awalt, its president, and Mr. Iager, an expert. Awalt testified that his corporation had built and sold 51 houses and lots in the subdivision since purchase, these being in the $30,-000.00 to $35,000.00 range. He stated that there were no sewerage and water facilities in the area when his corporation bought the tract and that sewerage and water had been installed by Chatham. On direct examination he was asked to tell the Board the basis upon which reclassification was sought. He said :

"Well as the property is laid out and I might add approved by the Planning Commission, the road patterns etc. and so forth an area next to the apartments, I've got a 150 feet deep which is the area that is hatched in white is presently zoned R-20. We don't feel that we can build residential properties on the property as it's laid out with the present zoning that

we have compatible with the existing development that we're doing and we feel that if we could use this immediate area that we have hatched in white right next to the apartment properties that as sort of a buffer zone for the rest of our development and if we could control the building of the properly designed apartment complex in the 6.74 acres and we could control the maintenance of the property and design the property so that all the parking area and so forth is in the rear backing up to the existing R-A-1 zone. We feel that the properties directly across the street and the subsequent [tiers] of lots going from the property directly across the street will be suitable for the same type of houses that we're offering in our development now."

On cross examination Mr. Awalt was asked:

"Mr. Awalt since June of 1965 that is the date of the last litigation what change, if any, has taken place in the general area since that time?"

to which he replied:

"In the general area of this, this specific area here just that we built more houses and we have brought in more utilities and St. Paul's School and Church has been constructed and there has been a little bit of commercial development below and the shopping center area starting in and also the B-2 Commercial has been developed somewhat."

The expert witness appeared to be more of an expert in the field of appraisal than in the field of planning. Most of his testimony was devoted (as was much of the testimony of Mr. Awalt) to contentions that the proposed reclassification would not have an adverse effect upon the protestants. He was asked to cite changes with reference to the subject property since the adoption of the zoning map and regulations in May of 1961. His reply was:

"One, the availability of public water and sewer made

available in the area. I think another one we should consider is the tremendous cost in development by the State Roads Commission at the intersection of Route 40 and 29, the interchange there. Also right in that same area there has been additional development and the Golden Triangle Section, such as the Drug Fair, the Montgomery Ward, the A & P and so forth. The construction and the new interchange are outlying 70 N, they're not sure. They, there are many other [huge sums] of money being spent all in this particular area for the public utilities and we feel that this particular area is certainly where the County is going to make its fastest population growth and I should probably have to say with the exception of Columbia that there has to be an increase in the density somewhere which seems to me where you have a small area that you can get a medium size or moderate type of developer and the Awalt Company is a developer, not a speculator. That he should have some type of flexibility in this zoning pattern as well as the larger land developer with the more flexible New Town zoning."

There are two distinct questions presented in this appeal, (1) whether Beltram has standing to challenge the proposed rezoning and, (2) whether Chatham met its burden of proof of establishing substantial change. There was no contention by Chatham that there was error in the original zoning.

## I.

The matter of defining a person aggrieved was fully reviewed in an opinion by Judge Barnes in *Bryniarski v. Montgomery County.* 247 Md. 137, 144-45, 230 A. 2d 289 (1967). In *The Chatham Corporation v. Beltram,* 243 Md. 138, 220 A. 2d 589 (1966) Judge (now Chief Judge) Hammond in an opinion involving some of the same parties said for this Court:

"Since Beltram's evidence was that he owned property, in which he lived, in close proximity to the reclassified land and had said that from his experience high density and smaller lots depreciated neighborhoods

and values—a claim Judge Macgill found plausible—there was no error in the ruling that Beltram had standing to sue. *Dubay v. Crane,* 240 Md. 180, 185, and the cases therein relied on, such as *Loughborough v. Rivermass,* 213 Md. 239, rightly were distinguished. In *Dubay* the protestant most likely to have had standing to sue lived 1500 feet away across the Beltway 'which, if not a complete shield against the apartments to be constructed, will serve as an adequate barrier,' and it appeared that the rezoning would aid rather than injure the value of nearby properties. *Cf.* also *Wilkinson v. Atkinson,* 242 Md. 231." *Id.* at 148-149.

In the light of the testimony of Mr. Beltram and Mrs. Hahn with reference to the proximity of their homes within the same subdivision to the reclassified area and their feeling that the increased density would depreciate their property values—a claim that the same Judge Macgill found plausible — there was no error in the ruling that Beltram had standing to sue.

## II.

As recently as last month this Court speaking through Judge Marbury in *Albert M. Smith v. Board of County Commissioners of Howard County,* 252 Md. 280, 249 A. 2d 708 (1969) said:

"On innumerable occasions, this Court has held that 'there is a strong presumption of the correctness of original zoning and of comprehensive rezoning, and that to sustain a piecemeal change therefrom, there must be strong evidence of mistake in the original zoning or in the comprehensive rezoning or else a substantial change in conditions.' *France v. Shapiro,* 248 Md. 335, 342, 236 A. 2d 726, 730, citing *Greenblatt v. Toney Schloss,* 235 Md. 9, 200 A. 2d 70, citing *Shadynook Imp. Assn. v. Molloy,* 232 Md. 265, 192 A. 2d 502 and cases there cited. We have further stated that where the Board's decision is supported by substantial evidence and the issue before it is 'fairly debatable' that the courts may not substitute their judgment for

that of the Board. *Scull v. Coleman*, 251 Md. 6, 246 A. 2d 223; *Ark Redi-Mix v. Smith*, 251 Md. 1, 246 A. 2d 220; *Bosley v. Hospital*, 246 Md. 197, 227 A. 2d 746. However, if the record is so devoid of substantial supporting facts as to be incapable of raising a debatable issue a court will declare the legislative or administrative action invalid. *France v. Shapiro, supra; Baker v. Montgomery County*, 241 Md. 178, 215 A. 2d 831; *Stocksdale v. Barnard*, 239 Md. 541, 212 A. 2d 282." *Id.* at 283-84.

As previously indicated Chatham does not here contend that there was mistake but relies on change. The evidence of change cited by Chatham may be summarized as installation of public sewerage and water, development by the State Roads Commission of an interchange at Routes 40 and 29, certain commercial developments not shown as having direct proximity to this location, construction of Route I-70 N (without a showing as to its location with reference to subject property or its bearing thereon), "huge sums of money being spent all in this particular area for the public utilities" and the feeling "that this particular area is certainly where the County is going to make its fastest population growth".

There is no showing of how the road development affects the subject property. Filed as an exhibit in this proceeding is the general plan for Howard County adopted July 20, 1960, and the zoning regulations adopted May 16, 1961. It is noted from an examination of the plan that the Route 29-Route 40 interchange was contemplated as well as the construction of I-70 N. It is further noted that the residential zoning and development stage plan adopted with the general plan called for R-20 in the subject area together with the installation of sewerage and water facilities, a number three priority having been established for installation of those facilities in the subject area.

The commercial development and the residential development both appear to have been contemplated in the original plan. *Cf. Smith v. Board of County Commissioners of Howard County, supra.* The improvement in water and sewerage facilities, contemplated at the time of the adoption of the plan, standing alone

586

may not be taken as a change of conditions affecting the neighborhood. *France v. Shapiro,* 248 Md. 335, 343, 236 A. 2d 726 (1968).

Chatham has not presented sufficient evidence to make the question of change fairly debatable. Accordingly, the lower court was correct in declaring the zoning reclassification invalid and of no effect.

> *Decree affirmed; costs to be paid by appellant.*