## MONTGOMERY, ET AL. *v.* BOARD OF COUNTY COMMISSIONERS FOR PRINCE GEORGE'S COUNTY, ET AL.

[No. 206, September Term, 1969.]

*Decided February 4, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SMITH and DIGGES, JJ.

*James F. Vance* and *William J. Avrutis* for appellants.

*James J. Lombardi,* with whom were *Lionell M. Lockhart, Harry L. Durity, Martin Hertz, James F. Sharkey, Albert J. Lochte, Barry S. Cramp* and *Emil A. Nichols* on the brief, for appellee Board of County Commissioners for Prince George's County.

*Paul M. Nussbaum,* with whom were *Herbert W. Reichelt* and *Reichelt, Nussbaum & Brown* on the brief, for appellees Samuel E. Hungerford, et al.

BARNES, J., delivered the opinion of the Court.

The appeal in this zoning case involves the rezoning of approximately 2.2 acres of land owned by Samuel E. Hungerford, Holden A. Hungerford and Samuel E. Hungerford, Jr., three of the appellees (owners or applicants) by the Board of County Commissioners for Prince George's County, sitting as a District Council (District Council), the remaining appellee, from the R-R (rural-residential) zone to the C-2 (general commercial) zone and the C-O (commercial office building) zone. The subject property is an irregularly shaped parcel of land located on the west side of Oxon Hill Road approximately 200 feet south of Arthur Drive and approximately 700 feet north of Notley Road in Prince George's County. Rezoning to the C-2 zone was recommended to the District Council by both the Technical Staff and by the Prince George's County Planning Board (Planning Board). The appellants, John A. Montgomery, et al. are nearby property owners who protested the granting of the rezoning. The Circuit Court for Prince George's County (Bowie, J.) declined to grant the motion of the protestants to remand the case to the District Council in order to make written findings of fact and conclusions, and, on June 25, 1969, finding that a fairly debatable issue existed before the District Council, affirmed the action of the District Council. The protestants perfected a timely appeal from the Circuit Court's decision of June 25, 1969.

For about 23 years approximately one-half acre of the subject property was the site of a non-conforming gasoline station, garage and machine shop. The applicants also maintain on the one-half acre portion of the subject property an automobile parts jobbing business, the parts being stored in an adjoining shed, in a former cattle van truck and in the basement of the home of one of the applicants.

In the Technical Staff Report of January 16, 1968, in regard to the subject property, the Summary of Reasons for the recommended approval of the rezoning from the R-R zone to the C-2 zone was as follows:

"1. The C-2 Zone for the subject parcel is in conformance with the proposals of the Plan for the South Potomac Sector, adopted November 1, 1967.

"2. The subject parcel is located on a proposed arterial highway which, when completed, should diminish any traffic problems which might exist as a result of the present non-conforming commercial usage on the parcel.

"3. In order to achieve orderly and harmonious growth in the South Potomac Sector, the adopted Plan is being used by the staff as the criterion for zoning recommendations in the area."

The results of the field inspection by the Technical Staff were as follows:

"The subject property is occupied by a Sinclair service station, a single-family dwelling, a barn, a shed, several used cars, old tires and assorted junk. Abutting land to the north is cleared and occupied by the Wisor Plumbing and Heating Corporation. East of the subject parcel across Oxon Hill Road, the land is vacant and wooded. Abutting the subject parcel to the south is a large single-family residence followed by a

cleared area containing three stumps and a few oak trees.

"Southwest and west of the subject parcel, the land is cleared and bordered on the west by trees and on the south by single-family dwellings.

"Single-family dwellings of the J. O. Davis Subdivision are located northwest of the subject parcel. The character of the area is single-family residential except for the commercial usage on the subject property to the north."

The Planning Board, on February 14, 1968, unanimously adopted a resolution recommending the rezoning to the C-2 zone for the identical three reasons given by the Technical Staff Report of January 16, 1968, *supra*.

After a substantial hearing, the District Council on December 6, 1968, ordered that the C-2 zoning be approved for "71,498 ± square feet (being that portion of the property described as acreage not including Lot 6 of the J. O. Davis Subdivision), with 6,474 ± square feet having been withheld to provide for an 80-foot right-of-way for Oxon Hill Road"; and that C-O zoning be approved for "23,168 ± square feet (being that portion of the property described as Lot 6 of the J. O. Davis Subdivision), with 1,661 ± square feet having been withheld to provide for an 80-foot right-of-way for Oxon Hill Road."

The order then recited that in support of the motion made by Commissioner Brooke (the motion was seconded by Commissioner Francois and unanimously passed), Commissioner Brooke made the following statement which was adopted by the District Council:

"We feel that the part we are recommending for C-2 would be in accordance with the reasons given by the Park and Planning Commission, and it is recommended as part of the South Potomac Sector Plan; but in deleting Lot 6 from the C-2 and suggesting this be C-O, we feel this

> would be a step-down and a buffer that would offer the residential subdivision which abuts this property the necessary protection."

It will be observed that there were no findings of fact or conclusions in regard to any *mistake* in original zoning or *changes* in the neighborhood which changed its character in the report of the Technical Staff, the recommendation of the Planning Commission or the order of the District Council.

The substantial testimony before the District Council involved evidence given by expert witnesses for the applicants, various letters and oral testimony of property owners in the, neighborhood opposing the proposed rezoning, and of letters and oral testimony of nearby property owners and improvement associations opposing the proposed rezoning. Because of the necessity to remand the case for written findings of basic facts and written conclusions by the District Council, we need not set forth in detail the nature and scope of the testimony before the District Council. It suffices to state that the applicants contend that the testimony indicates that there are 17 changes in the character of their "neighborhood" as they would define it geographically while the protestants contend that there are no changes in the character of the "neighborhood" as they define it.

The applicable statutory law in Prince George's County provides, in relevant part, as follows:

> "59-104. In Prince George's County, no application for a map amendment or special exception, which is contested, shall be granted or denied except upon written findings of basic facts and written conclusions."

This provision of the applicable statute became effective June 1, 1966, by the Laws of 1966, Chap. 426. Chap. 426 amended the Act of 1965, Chap. 898, effective June 1, 1965, which amended the Code of Public Local Laws of Prince George's County to add § 59-104 which provided:

"No application for a map amendment or special exception, which is contested, shall be granted or denied except upon written findings of basic facts and written conclusions."

It is thus seen that the only amendment to this provision of the Act of 1965, Chap. 898 by the Act of 1966, Chap. 426 was to make it clear that it applied only in Prince George's County; otherwise the substance of the provision requiring written findings of basic facts and written conclusions was the same.

In short, the mandatory requirement upon the District Council to make written findings of basic facts and written conclusions when granting (or denying) a map amendment (or special exception) has been effective in Prince George's County since June 1, 1965, or approximately three and one-half years prior to the order of the District Council of December 6, 1968, passed in the present case.

It is clear from our prior decisions that in order to sustain a rezoning different from the zone established in the comprehensive zoning map, it must be established that there was either a mistake in the original zoning or a change in conditions which has resulted in a change in the character of the neighborhood. *Wells v. Pierpont,* 253 Md. 554, 557, 253 A. 2d 749, 751 (1969) and prior Maryland cases therein cited.

Inasmuch as there is no contention in the present case that there was a mistake in the original zoning, it was necessary that the applicants establish before the District Council (a) what area reasonably constituted the "neighborhood" of the subject property, (b) the changes which have occurred in that neighborhood since the comprehensive rezoning and (c) that these changes resulted in a change in the character of the neighborhood. These are the "basic facts" and "conclusions" which the District Council must find and express in writing when it grants or denies a map amendment or special exception.

As we have indicated, the comprehensive rezoning oc-

curred in 1957; the subject property was then zoned R-R; and, the applicants sought a map amendment to a commercial zone. The "change-mistake" rule was, therefore, applicable as no "floating zone" is involved and the District Council *was required* by the statute to make the necessary findings and conclusions and to express them in writing. It is apparent that the District Council did not do this and we have no alternative but to reverse the order of the trial court and remand the case so that it may be remanded to the District Council for compliance with the mandatory requirement of the statute.

At the argument, counsel for the District Council indicated that the practice of the District Council in ruling on rezoning applications in which it agreed with the recommendations of the Planning Board or of the Technical Staff, as the case might be, was to adopt the findings in the report or recommendations relied upon rather than to make specific findings in the order of the District Council, itself. Although this is not a practice to be encouraged, we are not prepared to rule, as a matter of law, that the District Council may not, in a specific case, comply with the statutory requirement to make written findings of basic facts and conclusions by incorporating into its order specific findings of basic facts and conclusions of either the Planning Board or of the Technical Staff by specific reference to those findings. However, in the instant case it is clear that neither the Planning Board nor the Technical Staff made any such findings of the necessary basic facts or conclusions.

The finding by the Planning Board and the Technical Staff that the proposed C-2 zoning is in conformance with proposals for the Plan for the South Potomac Sector, adopted November 1, 1967—although a factor to be considered—obviously does not meet the requirements of the "change-mistake" rule necessary to determine whether or not the proposed rezoning should be granted or denied at the time of the application. The Plan outlines generally the criteria for the guidance of the zoning authorities for future zoning; the rezoning application seeks a deter-

mination in regard to whether or not the time has arrived to effectuate the Plan in a specific factual situation. The Plan does not, in itself, establish either a mistake in original zoning or a change in conditions changing the character of the neighborhood and does not, in itself, justify a rezoning. See *Board of County Commissioners for Prince George's County v. Edmonds*, 240 Md. 680, 687, 215 A. 2d 209, 213 (1965) ; *Board of County Commissioners for Prince George's County v. Kay*, 240 Md. 690, 694, 215 A. 2d 206, 208 (1965) ; and *Suburban Properties, Inc. v. Mayor & Council of Rockville*, 241 Md. 1, 8, 215 A. 2d 200, 205 (1965).

The trial court sought to avoid a remand of the case to the District Council by indicating that there was evidence before the District Council from which it *could have found* changes in the neighborhood which changed its character and concluded that the issue was, therefore, fairly debatable so that the order of the District Council should be affirmed. We express no opinion upon the correctness of these observations of the trial court upon the testimony before the District Council, but it is clear to us that the District Council, itself, must make the written findings of the basic facts and the written conclusions in order to comply with the statutory requirement in this regard. This cannot be done by the Circuit Court or by us on appeal.

Upon the ultimate remand to the District Council, it shall pass a new order in accordance with its written findings of basic facts and conclusions and the protestants or applicants shall then have the right to proceed further in regular course in accordance with the established law and practice in regard to orders of the District Council.

We can see no excuse for the disregard by the District Council of a mandatory requirement by statute to make written findings of basic facts and conclusions, particularly as this mandatory requirement has been in effect for over three and one-half years prior to the order of the District Council in the present case. We assume that

the practice of the District Council will forthwith be made to conform to the mandatory requirements of the statute.

> *Decision and order of the Circuit Court for Prince George's County of June 25, 1969, reversed and case remanded to the Circuit Court with instructions to reverse the order of the Board of C o u n t y Commissioners for Prince George's County, sitting as a District Council, dated December 6, 1968, and to remand the case to the Board of County Commissioners to make written findings of basic facts and conclusions and for the passage of an order in accordance with such written basic findings and conclusions, with further proceedings in accordance with this opinion, the costs to be paid by the Board of County Commissioners for Prince George's County, one of the appellees.*