HARLEY ET AL. *v.* ALUISI ET AL., constituting the District Council for the Maryland-Washington Regional District in Prince George's County, Maryland

[No. 38, September Term, 1970.]

*Decided October 16, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Joe M. Kyle*, with whom were *Heise, Kyle & Jorgensen* on the brief, for appellants.

*Albert J. Lochte, Associate County Attorney*, with whom were *Lionell M. Lockhart, County Attorney*, and *Harry L. Durity, Deputy County Attorney*, on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

The appeal in this zoning case challenges the validity of a resolution, dated June 11, 1969, of the appellee, Board of County Commissioners of Prince George's County, sitting as the District Council for the Maryland-Washington Regional District in Prince George's County (District Council) rezoning 20.212 acres of land of the 57.83 acre tract of the Arundel Asphalt Products, Inc. (Asphalt or applicant) from the R-R (Rural Residential) zone to the I-2 (Heavy Industrial) zone. The appellants are neighboring residential property owners who were protestants before the District Council and petitioners before the Circuit Court for Prince George's County upon appeal to that court from the District Council's action. The standing of

the appellants to appeal below or to this Court has not been challenged and is not an issue in the case. The lower court (Mathias and McCullough, JJ.) affirmed the action of the District Council in granting the rezoning of the 20.212 acres.

Asphalt owns a 57.83 acre tract on the northwesterly side of Tower Road near its intersection with Brandywine Road (Maryland Route 381) in Prince George's County. It is an irregularly shaped lot, adjacent to the right-of-way of the Pennsylvania Railroad Company for 329 feet of its northwesterly boundary, with a frontage of 867.69 feet for part of its southeasterly boundary on Tower Road. To the southwest of the subject property there are single-family homes adjacent to the property for part of the southwesterly boundary and the United States Military Reservation adjoins the subject property along the remaining portion of the southwesterly boundary. Except for the Military Reservation, the subject property, zoned R-R, is surrounded by R-R zoning. There are single-family dwellings north, south and east of the subject property. The subject property and the land surrounding it was zoned R-R in the comprehensive zoning shown in the General Plan of 1964.

In its application for rezoning, filed on July 27, 1965, Asphalt sought to have its entire 57.83 acre tract rezoned from the R-R zone to the I-2 zone. The application was in due course referred to the Technical Staff of the Maryland-National Capital Park and Planning Commission for investigation and report. The Technical Staff filed its report on August 29, 1967, recommending denial of the application, for the following three reasons:

"1. This request is not in conformance to the broad proposals of the General Plan, adopted January, 1964.
"2. There is no evidence of a change in the rural character of the area since the adoption of the original zoning map in 1966, nor is there evidence of an error.

"3. No significant zoning changes should be permitted without benefit of a comprehensive local master plan."

In its discussion of the matter the Technical Staff stated:

"The only available plan to guide the orderly growth of this area is the 1964 General Plan which recommends residential development for this general area at density of less than one dwelling unit per acre. The staff continues to stand opposed to zoning requests which do not fulfill the intent of the 1964 General Plan and strongly urge denial of such requests until such time as a more comprehensive plan can be developed for the area.

"Since the time of adoption of the zoning map, (December 2, 1966) there have not been any physical or zoning changes in this area to indicate that there is a reasonable basis to consider rezoning to industrial at this location. Neither have any comprehensive planning studies been undertaken to assess the overall land use arrangements which would produce a balanced community.

"This request is also premature, based on the absence of public utilities and the lack of adequate highway access. Tower Road, is a two-lane roadway and although the deduction for additional rights-of-way have been made at this time, there are no immediate plans for up-grading this highway." [Tower Road has been widened and improved since the Report of the Technical Staff.]

The Technical Staff Report quoted from a bulletin of the Planning Commission dealing with Industrial Land Use Needs which suggested a need for additional industrial land by the year 1980 as follows:

" 'A Zoning Plan that only preserves existing in-

dustrial sites without regard to future expansion for industry can lead a community to economic stagnation. Similarly, excess zeal on the part of citizens and officials toward industrialization can disrupt orderly community growth. . . . What is needed is an approach to industrial zoning that equates the supply of industrial land with the demand potential for industrial development of the community. Without such an evaluation, no zoning policy can effectively provide for the future growth and development of industry in the community.' "

The Technical Staff Report then commented:

"An evaluation of this type, concerning demand and potential, can only be accomplished when an area is subjected to a more comprehensive study which has not been undertaken at this time."

The Planning Commission, however, on April 24, 1968, recommended to the District Council that 20.212 acres of the 57.83 acre tract be rezoned to the I-2 zone, that the portion of the property located north of the proposed relocated Brandywine Road, for which a 150 foot right-of-way running through the subject property was withheld from consideration, should be retained in the R-R zone as well as a buffer strip, 100 feet wide along the southwesterly property line where the single-family dwellings abutted the subject property. The Planning Commission based its recommendations to the District Council on the following two reasons:

"1. The I-2 zoning recommendation, if granted, would provide facilities for limited industrial development, which is needed in the area.

"2. The Planning Board has offered protection to the adjacent residential properties, by suggesting a 100-foot buffer strip of R-R zoning to be retained in the area abutting the existing residential development."

280

At the hearing before the District Council on October 9, 1968, the president of the applicant testified in regard to the difficulty Asphalt had in locating property for the company's plant after it had been compelled, as a result of litigation, to remove its plant in June, 1964, from Walker Mill Road in District Heights. Asphalt located a small plant on the subject property in 1963 which was used in production until February, 1964. Although Asphalt used the property for the stockpiling of materials, the plant was never again used in production. It was removed in 1968. The company has been in the process of obtaining a new plant for the subject property, an important consideration being the property's close proximity to an adjacent railroad spurline. Counsel for Asphalt, the applicant, in concluding the testimony on its behalf stated:

"I would conclude our testimony by adding that the only change that has existed in this area was the recent zoning change, and I am sorry to say I do not have the number of that petition, but it was before this Board about a month ago. * * * From R-R to I-2."

The protestants produced evidence indicating that the local improvement association consisted of approximately 75 families with homes ranging in value up to $50,000; that the area was almost completely residential; that the proposed rezoning would impair the value of these residential properties; and that the proposed use would be offensive and injurious.

The District Council granted the rezoning as recommended by the Planning Commission. After an appeal by the protesting property owners to the Circuit Court for Prince George's County, the case was remanded to the District Council to make findings of fact. These findings of fact were made on June 11, 1969, and attached to a resolution of the District Council filed the same day granting the rezoning as recommended by the Planning Commission. The findings of fact and conclusions were as follows:

"1. The subject property consisting of approximately 57.83 acres is located on the Northwesterly side of Tower Road near its intersection with Maryland Route 381. The application requests a reclassification from R-R to I-2.

"2. There has been change in the area: C-2 and I-1 to the South, Southeast of the subject property and I-2 to the Southwest (Petition No. A-6940), Tower Road, which abuts the property, was widened in 1967.

"3. The recommendation of the Park and Planning Commission, adopted by the applicant, is for approval of the I-2 zone for 20.212 acres with the remainder in the R-R zone. Their recommendation was based on two reasons: (1) limited industrial development would be provided which is needed in the area and (2) protection of the residential property nearby would be afforded by a buffer strip which they have recommended be withheld from the I-2 zone.

## CONCLUSIONS

"1. There has been substantial change in the area so as to justify the rezoning.

"2. The District Council concludes that 20.212 acres should be reclassified to the I-2 zone and that this area is compatible with adjacent land use, in view of the remainder of the property being withheld from reclassification and the buffer strip which is also withheld from a reclassification."

The lower court heard the case on appeal on December 23, 1969. It concluded in an oral opinion that there has been change in the area; C-2 and I-1 to the south, southeast of the subject property and I-2 to the southwest (Petition No. A-6940); that the matter was fairly debatable and that the District Council's action should be affirmed. From an order of the lower court, dated January 7, 1970,

dismissing the appeal and sustaining the action of the District Council, a timely appeal was taken to this Court.

In *Montgomery v. Board of County Commissioners for Prince George's County,* 256 Md. 597, 261 A. 2d 447 (filed on February 4, 1970, after the hearing and decision by the lower court in the present case), we held:

> "Inasmuch as there is no contention in the present case that there was a mistake in the original zoning, it was necessary that the applicants establish before the District Council (a) what area reasonably constituted the 'neighborhood' of the subject property, (b) the changes which have occurred in that neighborhood since the comprehensive rezoning and (c) that these changes resulted in a change in the character of the neighborhood. These are the 'basic facts' and 'conclusions' which the District Council must find and express in writing when it grants or denies a map amendment or special exception." [1]
> (256 Md. at 602, 261 A. 2d at 450.)

The applicant did not attempt at the hearing to meet its burden to establish what area "reasonably constituted the 'neighborhood.'" It is urged by the applicant that the neighborhood concept is "difficult to define precisely" and that it is broader in a rural as opposed to urban area. The applicant contends that in any event, since no objections were raised to the changes it submitted, "the three zoning changes at least were includible in the neighborhood." We have grave doubts that any of the zoning changes, other than the C-2 rezoning to the north of

---

1. Even though the oral opinion of the lower court rather suggests that there might have been a mistake in the 1964 comprehensive zoning in including the subject property in the R-R zone, the lower court's decision was not based upon this theory but upon the theory of a change in the neighborhood by the three zoning changes mentioned. There was no evidence produced before the District Council in regard to any mistake in original zoning and the District Council in its resolution, findings of fact and conclusion did not purport to find or consider that there had been a mistake in original zoning.

Brandywine Road and some feet east of Tower Road could be said to be within an area which reasonably constituted the "neighborhood" in the instant case, but we do not find it necessary to consider this question. Assuming for the argument that the three zoning changes mentioned dealt with land in the "neighborhood," there was no proof that those "changes" resulted in a change in the character of the neighborhood. Indeed, the evidence is rather to the contrary and counsel for the applicant in his argument on behalf of the applicant before the District Council, quite frankly stated, "On the question of change, there is no great change there." The Report of the Technical Staff clearly finds that there was "no evidence of a change in the rural character of the area since the adoption of the original zoning map in 1966 nor is there evidence of an error." The Resolution of the Planning Commission does not purport to find that there had been any change in the *character* of the neighborhood, or, indeed, any change at all, although the District Council in its findings of fact recites the three zoning changes as a "change in the area," it does not purport to find that these "changes" resulted in a change in the character of the neighborhood, most likely because it could not conscientiously find that there had been any.

Under these circumstances, the applicant has failed to establish the third required factor to justify a rezoning of the property, i.e., that the alleged changes "resulted in a change in the character of the neighborhood." Consequently the action of the District Council in granting the rezoning was invalid and the lower court was in error in sustaining that invalid action.

> *Order of January 7, 1970, re-*
> *versed, the appellee District*
> *Council to pay the costs.*