## CLAYMAN ET AL. *v.* PRINCE GEORGE'S COUNTY ET AL.

[No. 332, September Term, 1971.]

*Decided July 10, 1972.*

The cause was argued on April 10, 1972, before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ., and reargued on June 30, 1972, before BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ., and W. HARVEY BEARDMORE, Associate Judge of the Fifth Judicial Circuit, specially assigned.

Argued and reargued by *James F. Vance* for appellants.

Argued by *John R. Barr, Associate County Attorney,* with whom was *Walter H. Maloney, County Attorney,* on the brief, for Prince George's County, part of ap-

pellees. *William V. Meyers*, with whom were *Nylen & Gilmore* on the brief, for R. Warren Ammann et al., other appellees. Reargued by *James F. Sharkey, Associate County Attorney*, for Prince George's County, part of appellees. *Harry W. Lerch* for R. Warren Ammann et al., other appellees.

BARNES, J., delivered the opinion of the Court.

In this appeal, Lee H. Clayman and Alan B. Mackall, the appellants, seek the reversal of an order, dated November 11, 1971, of the Circuit Court for Prince George's County (Ralph W. Powers, J.), affirming the action of the Board of County Commissioners for Prince George's County, sitting as a District Council (District Council), one of the appellees, in granting the application (No. A-7885) of R. Warren Amman, et al., the remaining appellees, for the rezoning of 6.3545 acres of land in Prince George's County from the R-R zone (Rural Residential) to the C-2 zone (General Commercial).

The land involved in the requested rezoning consists of 7.0645 acres of land in Prince George's County located on the east side of Piscataway Road, north of Windbrook Drive. It fronts 771.47 feet on Piscataway Road and 574.30 feet on Windbrook Drive. The Technical Staff of the Prince George's County Planning Board after deducting .71 acre of land for a right-of-way, leaving 6.3545 acres for the proposed C-2 use, recommended that the application for rezoning to the C-2 zone be denied because such rezoning would be contrary to the General Plan adopted in January 1964; there could likely be some delay in the completion of the necessary water and sewer facilities; there had been no mistake in the original zoning or a change in the character of the neighborhood since the original zoning; and any further use of land for commercial facilities should be where provided in the General Plan, which locations were far more advantageous than the subject property located, as it was, at the intersection of only an arterial and a major road.

The Planning Board, however, did not accept the recommendation of the Technical Staff, but on May 21, 1969, recommended approval of the requested rezoning upon three conditions, *i.e.* (1) the establishment of a 50-foot buffer along the north property line; (2) that landscaping should be provided along the frontage of Piscataway Road and Windbrook Drive to protect the residential development across these roads; and, (3) that the landscape plan be reviewed by the Planning Board. The reasons for its recommendation of approval of the granting of the application, subject to the conditions mentioned, were (1) it is on the corner of two major roads; (2) it is centrally located to serve as a neighborhood shopping center for the developed area around it; and, (3) the applicant has demonstrated a need. Commissioner Malzone dissented substantially upon the reasons for disapproval set forth in the Technical Staff report.

After hearings on September 9 and October 9, 1970, at which the applicants offered expert and other testimony and exhibits and the protestants offered evidence in opposition and submitted various written protests, the District Council on October 28, 1970, approved the application with three conditions, *i.e.* (1) a 20-foot buffer strip shall be established along the north property line; (2) landscaping shall be provided along the frontage of Windbrook Drive to protect the residential development across these roads; and, (3) the landscape plan should be reviewed by the Planning Board, subject, however, to the applicants' acceptance of these conditions.

The protestants, Clayman, et al., on November 30, 1970, filed their request to the District Council for reconsideration based on the reasons advanced by them in this appeal; but their request was ignored.

The applicants filed their acceptance of the rezoning conditions on December 23, 1970; and the District Council took final action to approve the conditional rezoning on the 2nd day of February, 1971, setting forth findings of fact and conclusions. In these, the District Council determined that the "neighborhood" of the subject prop-

erty was "the market area of the proposed shopping center." The District Council also found that within this neighborhood there had been changes indicative of increased density and urbanization. Sewerage became available to the emerging residential subdivisions; Piscataway Road is to be widened; population has increased substantially; traffic has increased on Piscataway Road; and Windbrook Drive is to be extended to Floral Park Road and Thrift Road; and, the applicants had established "a definite need for a shopping center in the area." The District Council concluded that "due to the substantial changes and change in character of this neighborhood that commercial use is now justified."

A notice of appeal was duly noted and, on January 18, 1971, the protestants, Clayman and Mackall, filed their petition for review in the Circuit Court for Prince George's County, setting up many grounds of alleged error. In Paragraph 5 of the petition for review, the petitioners alleged that they were "persons and taxpayers in Prince George's County Maryland, and own property in the general area of the property that was the subject of Zoning Map Amendment Petition No. A-7885." They allege that their homes and properties will be reduced in value and their enjoyment of their respective properties gravely impaired if the rezoning is allowed to stand. They further allege that each of them is a person qualified to appeal "pursuant to Article VII of the Prince George's County Charter and pursuant to Section 59-85(e) of the Public Local Laws of Prince George's County, Chapter 898, 1965 Laws of Maryland)." The answer of the County to the petition for review denied the allegations of Paragraph 5 of that petition. The applicants, on February 16, 1971, filed a motion to dismiss the appeal on the ground that it was prematurely filed, the *final* action of the District Council not having occurred until February 2, 1971, and further that one of the applicants, William V. Meyers, was only acting as agent and attorney for the owners of the subject property, had no other interest in it, and accordingly the ap-

peal should be dismissed as to him. Replies to this motion to dismiss were filed by the petitioners and the County and Judge DeBlasis denied the motion to dismiss on April 29, 1971.

On May 4, 1971, the applicants filed their answer to the petition for review, denying the allegations of Paragraph 5 of that petition and affirmatively alleging that the petitioners were not aggrieved within the provisions of § 59-85 (e) of the Public Local Laws of Prince George's County, and that Chapter 713 of the Prince George's County Charter (the Charter) was not applicable at the time of the hearing before the District Council; and, in any event, there was no evidence that the petitioner Mackall was a taxpayer and was, therefore, not "a person of record, as defined in § 701 (e) of the Charter," and, if so held to be such, § 713, purporting to expand the right of appeal to all taxpayers in any zoning case without requiring proof of interest in the case, "is invalid and unenforceable." It was also alleged that petitioner Clayman was in no sense a party to the case, he merely being a spokesman for the opposition and, if deemed to be a party, was in no manner aggrieved by the decision of the District Council.

The County, on May 27, 1971, filed an elaborate memorandum in opposition to the memorandum theretofore filed by the petitioners. No point was raised or argued in regard to the standing of the petitioners to take the appeal. On September 29, 1971, the applicants filed a reply memorandum adopting the County's reply memorandum and advancing the argument that the petitioners were without standing to appeal, citing several Maryland cases.

The matter came on for hearing before Judge Ralph W. Powers on October 1, 1971, and after argument was taken under advisement.

Judge Powers, on November 11, 1971, filed his opinion and an order affirming the action of the District Council.

Judge Powers was of the opinion that it was fairly debatable that there were sufficient changes in the

"neighborhood" to change its character and that the District Council could legally grant the application so far as the Maryland "change-mistake" rule was concerned. He rejected the contention of the petitioners and protestants that conditional zoning was not prohibited by the adoption of the new Charter for Prince George's County inasmuch as this Charter became effective after the case was decided by the District Council. It will be noted that Judge Powers did not consider or decide any question in regard to the standing of the petitioners to take the appeal from the action of the District Council. He passed an order on November 11, 1971, *affirming* the action of the District Council, and *not dismissing the appeal* for want of standing to take the appeal. In sum, the question was not "tried and decided" by the lower court.

The County did not challenge the standing of the appellants to take the appeal from the action of the District Council to the lower court either in its brief or at the argument before us nor did the appellants argue the question of standing in their brief. The appellants raised a number of contentions on the appeal to us which they had raised and argued before the lower court, *i.e.*, (1) that the action of the District Council was arbitrary, unreasonable and capricious in that (a) the applicants offered no sufficient evidence to establish the proper boundaries of the "neighborhood" of the subject property and (b) made no showing of changes in the neighborhood changing its character (there being no "mistake" in the original zoning) and (2) the action of the District Council was illegal and void in granting conditional zoning inasmuch as such action was (a) without statutory authority and was contrary to public policy; (b) was in violation of the statutory zoning moritorium and the zoning moritorium in the Charter; (c) was in violation of the express prohibition of conditional zoning in the Charter; and, (d) was in violation of statutory and constitutional requirements for uniformity of treatment of the zoning law to all land within the same zoning classification.

In regard to the question of standing, we shall not con-

sider it because of the provision of Maryland Rule 885 that this Court does not ordinarily "decide any point or question which does not *plainly* appear by the record to have been *tried and decided* by the lower court * * *." (Emphasis supplied.) Not only does the issue of standing not plainly appear by the record to have been tried and decided by the lower court, but the record plainly shows to the contrary. This aspect of the present case is to be distinguished from our decision in *Panamerican Consulting Co. v. Brown,* 238 Md. 438, 548, 209 A. 2d 575 (1965) in which two legal questions were presented *and argued* in the lower court; and the trial court, having decided one question, did not deem it necessary to decide the other. There is nothing in the record to show that the question of standing *was argued* before the lower court and the absence of any consideration of the question in the briefs of the appellants or the appellee County strongly suggests that it was not. There is no mention of the question in the opinion of the lower court which also strongly suggests that it was not pressed or argued before that court.

As our prior decisions indicate, the principal purposes of this provision of Rule 885 were (a) to require counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings, *Lane v. State,* 226 Md. 81, 172 A. 2d 400 (1961) and (b) to prevent the trial of cases in a piecemeal fashion, thus accelerating the termination of litigation, *Hewitt v. State,* 242 Md. 111, 218 A. 2d 19 (1966). In our opinion, it would frustrate these purposes of Rule 885 to decide the issue of standing which was not "tried and decided by the lower court."

On the merits of this appeal, the appellants have raised a number of questions, several of which might well require a reversal of the order of November 11, 1971. We only find it necessary, however, to decide one of these questions, *i.e.,* whether there was sufficient evidence before the District Council to make fairly debatable its

findings of changes in the "neighborhood" of the subject property since the comprehensive zoning which have resulted in a change in the character of the neighborhood. In our opinion, there was not sufficient evidence, under our prior decision, to make these issues fairly debatable.

In *Chevy Chase Village v. Montgomery County Council*, 258 Md. 27, 41-2, 264 A. 2d 861, 868 (1970), we stated:

> " 'On innumerable occasions, this Court has held that *"there is a strong presumption of the correctness of original zoning and of comprehensive rezoning, and that to sustain a piecemeal change therefrom, there must be strong evidence of mistake in the original zoning or in the comprehensive rezoning or else a substantial change in conditions."* * * *' "
> (Emphasis in original.)

In *Montgomery v. Board of County Commissioners for Prince George's County*, 256 Md. 597, 602, 261 A. 2d 447, 450 (1970), it was stated by the Court:

> "Inasmuch as there is no contention in the present case that there was a mistake in the original zoning, it was necessary that the applicants establish before the District Council (a) what area reasonably constituted the 'neighborhood' of the subject property, (b) the changes which have occurred in that neighborhood since the comprehensive rezoning and (c) that these changes resulted in a change in the character of the neighborhood. These are the 'basic facts' and 'conclusions' which the District Council must find and express in writing when it grants or denies a map amendment or special exception."

*See also, Harley v. Aluisi*, 259 Md. 275, 282, 269 A. 2d 575, 579 (1970), citing *Montgomery* with approval and pointing out that the applicant for rezoning has the burden of proof in establishing these factors.

Although what constitutes the neighborhood of a subject property for the purposes of applying the Maryland "change-mistake" rule "should not be precisely and rigidly defined, but may vary from case to case," *Woodlawn Ass'n v. Board of County Commissioners for Prince George's County,* 241 Md. 187, 198-199, 216 A. 2d 149, 156-157 (1966), nevertheless, the neighborhood in any area must be an area which *reasonably* constitutes the immediate environs of the subject property. *Montgomery, supra.* In our opinion, the "neighborhood" of an area coinciding with the market area of the proposed Windbrook Shopping Center (which appears as Map 2)—said to contain some 51.6 square miles [1]—is most certainly not an area reasonably constituting the neighborhood of the subject property. The rule requires that the "neighborhood" must be the *immediate* neighborhood of the subject property, not some area miles away; and the changes must occur in that immediate neighborhood of such a nature as to have *affected its character. See Bauserman v. Barnett,* 257 Md. 258, 261, 262 A. 2d 521, 523 (1970) and *Randolph Hills v. Whitley,* 249 Md. 78, 83, 238 A. 2d 257, 260 (1968), and cases therein cited. In our opinion, the applicant did not establish, and the District Council did not properly make a finding, of what constituted the area which reasonably constituted the neighborhood of the subject property and for this reason appellees' position must fail.

Also, in our opinion, the applicant did not establish changes which, under our decisions, resulted in a change in the character of the "neighborhood" even assuming, arguendo, that a reasonable area constituting the neighbor-

---

1. Applicants' feasibility study showed, through use of a map and other descriptive material, a market or service area of 51.6 square miles consisting of a Primary Service Area, coextensive with Election District 5 (Census Tract 13), of 38.4 square miles, and a Secondary Service Area consisting of 13.2 square miles. The District Council stated in the findings of fact that "[t]he applicant has proferred [*sic*] a neighborhood which coincides with the *market area* of the proposed shopping center. We will accept this since it was not rebutted and because it is those people within this area that would be affected by the application." (Emphasis supplied.)

hood had been established. Nor do the changes found by the District Council in its findings of fact meet the test of our decisions.

The District Council first found that sewerage for the emerging subdivision had become available since the comprehensive zoning was adopted in 1960. We have held, however, that the availability of sewer and water services does not result in a change in the character of the neighborhood in that these services are equally important to residential as to commercial development. *Chatham Corp. v. Beltram,* 252 Md. 578, 585-86, 251 A. 2d 1, 5 (1969) and *Smith v. Board of County Commissioners of Howard County,* 252 Md. 280, 285, 249 A. 2d 708, 711 (1969), and cases therein cited.

Secondly, the District Council found that Piscataway Road is planned for widening, and the extending of Windbrook Drive is planned. Here again, we have held that these contemplated road improvements do not change the character of a neighborhood. *Chatham Corp. v. Beltram, supra,* 252 Md. 578, 585, 251 A. 2d 1, 5 (1969); *Helfrich v. Mongelli,* 248 Md. 498, 504, 237 A. 2d 454, 458 (1968) and cases cited in the opinions in those cases.

Thirdly, the District Council found that "traffic has increased on Piscataway Road." This indefinite finding evidences no change in the character of the neighborhood. *See Hardesty v. Dunphy,* 259 Md. 718, 271 A. 2d 152 (1970) and our prior decisions cited in the opinion in that case.

The fourth finding of the District Council was that there had been subdivision growth with increased density and urbanization. The comprehensive zoning placed the area in an R-R zone and thus it was contemplated that single-family residential development would occur. It did, but this contemplated growth does not indicate a change in the character of the immediate neighborhood. *Hardesty v. Dunphy, supra,* and *Cabin John Limited Partnership v. Montgomery County Council,* 259 Md. 661, 271 A. 2d 174, 179 (1971), and cases therein cited.

Under our decisions, no changes were established by

the applicant and found by the District Council, even when all of the alleged indicia of change are considered together, which resulted in a change in the character of the immediate neighborhood so that there was no fairly debatable issue before the District Council which would justify its action in granting the rezoning.

> *Order of November 11, 1971, reversed, one-half of the costs to be paid by Prince George's County, one of the appellees; the other appellees to pay the remaining one-half of the costs.*