MAYOR AND CITY COUNCIL OF GREENBELT,
ET AL. *v.* BOARD OF COUNTY COMMISSIONERS
FOR PRINCE GEORGE'S COUNTY, ET AL.

[No. 518, September Term, 1966.]

*Decided October 18, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, OPPENHEIMER and McWILLIAMS, JJ., and CLAPP, J., Associate Judge of the Sixth Judicial Circuit, specially assigned.

*Joseph A. DePaul,* with whom were *Ronald A. Willoner* and *Albert Ginsberg* on the brief, for Mayor and City Council of Greenbelt, et al., part of appellants; *William J. Avrutis,* with whom were *Donald B. W. Messenger* and *James F. Vance* on the brief, for First National Realty Corporation, another appellant.

*James J. Lombardi,* with whom were *Lionell M. Lockhart,. Harry L. Durity, Joseph S. Casula* and *Martin Hertz* on the brief, for Board of County Commissioners, part of appellees; *Carlyle J. Lancaster,* with whom were *Welsh & Lombardi* on the brief, for Milton E. Selig, other appellee.

McWILLIAMS, J., delivered the opinion of the Court.

Appellants contend, among other things, that this case is controlled by *Woodlawn Area Citizens' Association v. Board of County Commissioners,* 241 Md. 187, 216 A. 2d 149 (1966). Our conclusion that *Woodlawn* is not controlling makes our consideration of the other questions presented unnecessary. We shall state only the relevant facts.

Milton E. Selig, an appellee (Selig), owns a vacant, wooded, triangular parcel of land containing 57 acres in the City of Greenbelt, an appellant (Greenbelt), in Prince George's County. The southern boundary of his land (2499 feet) is Greenbelt Road. The northwestern boundary (1569 feet) is Kenilworth Avenue. The northeastern boundary (1543 feet) is the Capital Beltway (Interstate Route 495). To the north of the triangle is the Beltway-Kenilworth Avenue interchange. 2400 feet to the southeast is the Baltimore-Washington Parkway—Beltway interchange. Immediately to the southwest is the City of Berwyn Heights. To the east is Greenbelt. West of Kenilworth Avenue

and north of Greenbelt Road are a school, a large shopping center, the Spring Hill Lake apartment complex and some land zoned C-O (Commercial Office Building). To the south is the 1100 acre Greenbelt Regional Park. Further east on Greenbelt Road are the large installations of the National Aeronautics and Space Agency (NASA).

In 1962 Selig sought the reclassification of his land from R-P-C (Planned Community) to C-2 (General Commercial). Earlier (1956 and 1957) applications for reclassification had been either withdrawn or denied. The technical staff recommended denial of the application for C-2 zoning but, conformable with the Master Plan adopted in April 1960, recommended reclassification from R-P-C to R-55 (One-Family, Detached Residential). The Planning Board approved the recommendations of the technical staff. On 21 February 1962 the District Council, adopting the recommendations of the Planning Board, denied the application for reclassification to C-2 and reclassified the property from R-P-C to R-55.

Selig applied once more for C-2 zoning on 4 March 1965. On 7 April 1965 the technical staff recommended denial of the application. In its report, however, reference was made to a new Master Plan (adopted 10 February 1965) in which a C-O-P (Commercial Office Park) classification was recommended for Selig's property. Since the C-O-P classification did not then, nor does it now, exist, the technical staff stated it was "the intent of the Plan that this tract *be reserved* for institutional or commercial office park use—or a combination of these two uses." (Emphasis supplied.) The Planning Board, on the same day, recommended to the District Council that the application be denied for the reasons set forth in the technical staff report.

After a hearing, on 23 April 1965, the District Council took the matter under advisement and on 6 July 1965 it approved unanimously the reclassification to C-2. On 9 July 1965 Commissioner Spellman, a member of the District Council, reversed herself and expressed a desire to vote against the reclassification. On 3 August 1965 her statement of 9 July was made a part of the record. Commissioner Sutphin's (a member of the Coun-

cil) reasons for voting in favor of the reclassification were, on the same day, also made a part of the record.

Among other things, the District Council, after the remand hereinafter mentioned, found as a fact:

"1. That since February 16, 1962 * * * there was a substantial change in the character of the neighborhood surrounding the premises in question.

"2. That substantial rezoning had taken place in relatively close proximity to the premises for high rise apartments and medium density uses as well as commercial uses. Some of the following rezonings are but a few of the changes: R-10 zoning to the south of the subject property, R-18 zoning to the east, and two commercial rezonings to the west of Greenbelt. * * *."

* * *

"5. That the Maryland Park and Planning Commission and its Technical Staff recognized the changes in the area by recommending a zoning category other than residential; and * * * that to zone the subject property for Commercial Office Complex use was not acceptable, since this recommended use was not provided for under the existing zoning ordinance."

The Council's conclusions, in part, are:

"1. That the requested C-2 zoning should be granted.

"2. That the best use of the subject property is for commercial use, including a regional shopping center, under the existing C-2 category of the Zoning Ordinance.

"3. * * * that both the Planning Commission and its Technical Staff implied that there had been a sufficient change in the area to justify a rezoning. * * * that there have been sufficient and substantial changes in the character of the area surrounding the subject premises since February 16, 1962, to warrant the granting of the zoning as requested.

"4. * * * that the evidence clearly and positively shows that the requested zoning should be granted be-

cause the property is unfeasible for any type of residential use."

The City of Greenbelt and some of its citizens, on 10 August 1965, noted an appeal to the circuit court. Three days later, First National Realty Corporation (First National), the owner of the nearby shopping center, also noted an appeal. Its standing to do so was challenged and eventually resolved against it.

Counsel were quite active in the succeeding months. There were requests for particulars, motions for intervention, a motion to consolidate, depositions, motions to enlarge the record, and the like. On 22 March 1966, Judge Powers remanded the record to the District Council to make the findings of fact and written conclusions required by a statute which became effective 1 June 1965 (Laws of Maryland 1965, ch. 898, sec. 59-104). The Council's findings and conclusions, dated 24 May 1966, were returned to the circuit court on 30 June 1966. The case finally was reached for trial on 8 September 1966. On the following day Judge Powers delivered an oral opinion affirming the action of the County Council.

In his opinion, Judge Powers said:

"The crux of this case, as I see it, is whether or not the action of the District Council is supported by the record. And the principal point raised by those objecting to the granting of this application is that the matter was adjudicated by the action of the District Council in 1962 and that under the holding of the Court of Appeals in the Woodlawn [*supra*] case that is res judicata and that there is not a sufficient showing of change in condition from that time to the time of this hearing to justify the change in zoning classification."

After noting the rezonings mentioned in the District Council's findings, he called attention to the relevance of other rezonings mentioned in the evidence:

(a) 6 acres on the other side of Kenilworth Avenue from Selig's property changed to C-O (Commercial Office) on 17

December 1963. Appellants disparage this, claiming it has not been developed.

(b) 18 acres 2100 feet to the west of Selig's property changed to R-18 (Multiple Family, Medium Density Residential) on 18 September 1964. Appellants disparage this also, claiming the 18 acres is in part surrounded by R-18 zoning.

(c) 29,000 square feet 2100 feet west of Selig's property changed to C-O on 18 September 1963.

(d) 63,000 square feet 2300 feet west of Selig's property changed to C-1 (Local Commercial) on 9 August 1964. Appellants say (c) and (d) are too small and too far away to be considered.

There is in the record evidence of other rezonings, mentioned neither by the Council nor Judge Powers, which might be said to have significance:

(a) 38,975 square feet 2100 feet west of Selig's property changed to C-1 on 17 August 1962.

(b) 125 acres on the B & O Railroad 2600 feet west of Selig's property changed to I-2 (Heavy Industrial) on 5 November 1963.

(c) 2 acres, 3000 feet west of Selig's property changed to C-2 on 17 May 1963.

Judge Powers expressed some doubt that "the commercial applications down on Greenbelt Road are significant" but he did "believe that large tracts for high density housing * * * are within a sufficient distance to be significant and the C-O zoning across the highway is [also] within a distance to be significant."

Appellees point to the completion of Capital Beltway in 1963 and of Kenilworth Avenue in 1964 and argue that a significant change in the character of the neighborhood was thereby effected. Judge Powers remarked that "the impact of the completion of this vast highway development was not felt in 1962 and has been felt since it was completed * * *." It must be remembered, however, that the location and design of the Capital Beltway and Kenilworth Avenue were known to both the Planning Board and the District Council in February 1962, a circumstance which makes *Finney v. Halle,* 241 Md. 224, 216 A. 2d 530 (1966), relied upon by appellees, inapplicable here. In *Fin-*

*ney* the precise location of the Baltimore Beltway was unknown when the comprehensive zoning map was adopted. *Cf. Agneslane, Inc. v. Lucas,* 247 Md. 612, 233 A. 2d 157 (1967). But, in the case at bar, there seems to be no dispute about the fact that the dualization of Greenbelt Road had not been contemplated in February 1962 and that it has since been accomplished. In light of the fact that Selig has no access along either Kenilworth Avenue or the Beltway, the dualization of his ½ mile frontage on Greenbelt Road (his only access) would seem to be evidence of a change having considerable significance. *Jobar Corp. v. Rodgers Forge Community Association,* 236 Md. 106, 202 A. 2d 612 (1964).

The evolving stance of the Planning Board and its technical staff in respect of Selig's property provides a diverting, if per se inconclusive, bit of evidence that conditions have been changing in the neighborhood. It will be recalled that R-55 was recommended in place of R-P-C in 1962. In 1965 C-O-P was recommended in place of R-55. Denial of Selig's present request was recommended not because of any feeling that R-55 was correct and should be retained but only because the classification (C-O-P), obviously suggested by the change in conditions, was not available.

Unlike the situation in *Woodlawn, supra,* we think the evidence before the District Council of change in the character of the neighborhood since February 1962 was sufficient to create a fairly debatable question. In *Woodlawn* the first item was the proposed East-West Highway which, when built, would run along one side of the property in question. Judge Hammond (now Chief Judge) pointed out that the "same road was alleged as a change" and "considered in the disposition of the" earlier application. The second was the nature of the terrain but this also had been considered in the earlier case "and obviously was unchanged." The third was the need for apartments which had been considered in the earlier case and which was found to be no greater. The fourth was 8 reclassifications from R-55 to R-18. In respect of those reclassifications, Judge Hammond said:

> "[A]ll of them were of pieces of land which were on the far side of wide, busy highways and a long dis-

tance from the subject property and the protesting neighbors. Three of these reclassifications involved small contiguous tracts about 4100 feet from the land involved here and across Route 450. Another is also across Route 450 some 6800 feet distant. Three others are from 6400 to 7200 feet away across Route 450, and the eighth is about 3300 feet away across Riverdale Road." *Id.* at 198.

The factual disparity between the case at bar and *Woodlawn* is so obvious that further discussion is unnecessary.

Other questions were presented by the appellants, all of which were disposed of by Judge Powers. Since we agree with his finding that the action of the District Council was fairly debatable we think it unnecessary to either consider or disturb his other rulings.

*Order affirmed.*
*Costs to be paid by the appellants.*