MONTGOMERY COUNTY COUNCIL *v.*
KACUR, ET AL.

[No. 149, September Term, 1968.]

*Decided April 29, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SMITH, JJ.

*Paul A. McGuckian, Assistant County Attorney,* with whom were *David L. Cahoon, County Attorney,* and *Alfred H. Carter, Deputy County Attorney,* on the brief, for appellant.

*J. Robert Walsh* for appellees.

BARNES, J., delivered the opinion of the Court.

This case involves an appeal from the decision of the Circuit Court for Montgomery County (Pugh, J.) reversing the decision of the Montgomery County Council sitting as a District Council for that portion of the Maryland-Washington Regional District located in Montgomery County, in denying the application for zoning reclassification of John C. Kacur and Leona B. Kacur, his wife, the appellees before us.

The subject property consists of 1.707 acres and is located on the south side of River Road approximately 450 feet northwest of the intersection of Falls Road and River Road in Potomac, Maryland, in the Tenth Election District of Montgomery County. The property is "L" shaped, and has a frontage of 165.4 feet on River Road, with the largest part of the tract forming a rectangle extending southwest from the River Road frontage, while the projection which completes the "L" is substantially smaller, and extends from the rear of the subject property in a westerly direction to Rock Run, a small stream. It is improved with a single-family residence. The subject property is bounded on all sides by land zoned R-R (Rural-Residential) or R-A (Agricultural-Residential). The parcel of land to the north and west of the subject property, and also bounded by River Road to the north and Rock Run to the south is zoned R-R. To the west and across Rock Run, the land is zoned R-A.

To the south, in the rear of the subject property, the zoning is R-R. Farther to the south, the property lying between Falls Road and Rock Run is zoned R-R. Immediately to the east of the subject property is a narrow strip of land which is zoned R-R, and adjacent to that and farther to the east along

the south side of River Road is a parcel zoned C-1. This parcel extends to the intersection of Falls Road and River Road, with a frontage on both of those arteries. To the north of the subject property and across River Road, the land is zoned R-R and C-1, in much the same pattern as on the south side of River Road. Thus, it may be observed that in each quadrant of the intersection of Falls and River Roads is a commercial area, extending away from the intersection no more than a few hundred feet. This commercial area is known as Potomac Village, and contains a variety of local commercial uses serving the surrounding residential and agricultural area. They are the only such uses within a radius of several miles, and the only commercially zoned land in the entire area is in the immediate and contiguous vicinity of the intersection.

The Kacurs, as contract purchasers, filed the application on November 29, 1966, to rezone the subject property from the existing R-R zoning to either C-1 (Local Commercial) or C-2 (General Commercial). By deed recorded on January 9, 1967, they completed the purchase of the subject property, not contingent upon rezoning or any other factor. The property falls within the Potomac-Travilah and Vicinity Planning Area of the Maryland-National Capital Park and Planning Commission. On February 16, 1966, the Commission approved a Master Plan for this area, and on January 25, 1967, the County Council adopted the plan. The Zoning Plan for Potomac Village, a part of the Master Plan, designates the subject property as R-R, while the complementary Land Use Plan for the same area shows most of the subject property as a "single family area suitable for special exception uses" with a small strip at the rear of the property bordering Rock Run as a "conservation" area.

The Technical Staff Report of the Maryland-National Capital Park and Planning Commission, dated August 1, 1967, stated that the Master Plan contemplated only a local commercial zone consisting of relatively light retail uses to serve the immediate neighborhood. To effectuate this end, the plan attempted to create a buffer zone between the commercial area and the surrounding residential neighborhood. Thus, the bulk of the subject property was specifically excluded from the proposed commercial area, but was recommended for special excep-

tion use, while the 0.2 acres of the subject property located within the "conservation strip" centered along Rock Run was intended to complete the buffering. It was also pointed out by the Report of the Technical Staff that under the Master Plan, there was an additional part of the subject property which fell within the 75 feet of the centerline of River Road which was designated as required for future right-of-way purposes. The Staff Report concluded that the "proposed commercial areas [in the Master Plan] * * * are properly located and of sufficient size to adequately serve the projected future population of the area" and, accordingly, recommended that the requested C-2 and C-1 zoning be denied, so that the "expansion of commercial zoning not be permitted and that development of the area [may] proceed in accordance with the adopted Master Plan for the area."

On August 10, 1967, the Montgomery County Planning Board of the Maryland-National Capital Park and Planning Commission, at a regular meeting at which 3 of its 5 members were present, unanimously recommended that the Kacurs' application be disapproved, and approved the report of the Technical Staff "as generally stating the Board's opinion" concerning the application.

On August 31, 1967, a hearing was held before a Hearing Examiner of the "Montgomery County Council Sitting As A District Council Under The Maryland-Washington Regional District Act." Counsel for the Kacurs first stated that the Kacurs would waive their claim for C-2 rezoning, as originally requested in their application. Mr. Kacur testified briefly in regard to the facts surrounding his purchase of the subject property. The Kacurs then put on as their witness, Oliviero D'Aprile, a real estate expert, who testified that, in his opinion, the Kacurs' property was unsuitable for residential development, primarily because of its proximity to the commercial area, and also because of its location on a main thoroughfare, especially in light of the proposed widening of River Road. It appears that the residential development he had in mind may have been limited to the type of homes generally being built in the Potomac area, i.e., "a fifty or sixty thousand dollar residence." He concluded, however, "It [the subject property] would be suitable for any-

thing else, but the residential." In addition, he stated, "I figure it might be capable of a special exception."

The Kacurs' only other witness was Mrs. Susie V. Watwood, the real estate broker who was the agent for the seller who had sold the property to the Kacurs. Mrs. Watwood stated that she had "handled [this] transaction" and had received her entire commission from the seller, and not from the Kacurs. She testified that the subject property had been on the market for approximately one and one-half years before it was eventually sold to the Kacurs; that the sale price as well as the price originally asked was greatly in excess of the going rate for residential property in the neighborhood, but was consistent with that normally paid for commercial property; and that no one had expressed any interest in buying the property for residential purposes. She also stated, however, that it might be possible to build three lower-priced houses on the property and sell them, although she indicated that this would not be satisfactory to the present owner who would be unable to recapture his investment in the land with such a project. She also testified that the subject property "might be suitable for special usage." In addition, the Kacurs submitted several "letters of consent" from neighboring property owners who expressed their "unqualified consent to the change in zoning" from R-R to C-1.

On October 16, 1967, the Hearing Examiner filed an extensive and well-reasoned "Report and Recommendation" which concluded that the application should be denied. In her report, the Hearing Examiner first gave a detailed analysis of the character of the neighborhood, and then reviewed the testimony given at the hearing. She noted that both of the appellees' real estate experts had testified that the subject property was capable of being utilized for a special exception, and also pointed out that Mrs. Watwood had testified that, under the existing zoning, the Kacurs could construct and sell 2 or 3 houses which would market for $25,000 to $30,000 on the subject property. She also pointed out that, in addition to the approximately 47 special exception uses available in the R-R zone, there are a number of permitted R-R uses which do not require a special exception.[1]

---

1. The opinion lists among those permitted uses set out in Sec-
253 Md.—8

In regard to the question of an unconstitutional deprivation of property without due process of law, the report concluded that the Kacurs had failed to prove such deprivation. It was stated:

> "* * * the evidence further establishes that there are many permitted uses (a number of them institutional) other than single family, detached residential in the R-R zone and that a number of special exception uses are available, as well. The record is totally devoid of any evidence that the subject property is unsuitable and cannot be used for the permitted uses in the R-R zone, other than single family detached residential and is replete with ample evidence as to the suitability of the subject property for special exception usage. * * * In the absence of such evidence, there is no basis upon which to determine whether the applicants have been deprived of all reasonable use of their property or have had the value of their property seriously impaired."

On the issue of the desirability of granting the application, the Hearing Examiner also ruled against the Kacurs. She stated that there was no credible evidence of the economic effect of a denial on the application, nor any attempt to show that the granting of the application would not have an adverse effect on the public interest. She characterized the evidence of the Kacurs as "unsupported conclusionary opinion" evidence. It was stated that "the grant of the requested reclassification, contrary to the

tions 111-7a and 111-5a of the Montgomery County Code (1965): "accessory buildings and uses; churches, convents, monasteries and other places of worship; dwellings, one family detached; fire stations, ambulance and rescue squads supported in whole or in part by County or special area taxes; guest house as an accessory building; kennel non-commercial; libraries, museums and similar institutions of a non-commercial nature; off street parking of motor vehicles in connection with any use permitted in the R-R zone; professional office in a one-family dwelling for person actually residing in the dwelling; publicly owned or government operated buildings and uses, including community buildings, rental of guest rooms to not more than two roomers; and swimming pools, private."

comprehensive plan for the area, would have a substantial adverse effect on the public welfare," and, further stated that, "1 am unable to find and conclude that the denial of the requested reclassification has an adverse effect, economic or otherwise, on the applicants, the surrounding properties or the neighborhood as a whole, sufficient to justify or compel the requested reclassification." Her conclusion was:

> "1 find and conclude that there is neither change in the character of the neighborhood nor error in the original zoning sufficient to justify the requested reclassification, I further find and conclude that the denial of this application and the continuation of the existing R-R classification does not constitute a confiscatory exercise of the police power by the district Council or a deprivation of property without due process of law or the payment of just compensation."

and, accordingly, the recommendation was that the application be denied.

On October 31, 1967, the County Council issued an "Opinion and Resolution" in which it noted its agreement with the recommendations of the Hearing Examiner, and stated that "the applicant has failed to demonstrate that this property should not be classified R-R", and resolved that the application be denied.

On November 30, 1967, the applicant filed an order for appeal in the Circuit Court for Montgomery County and on December 11, 1967, filed a petition for appeal, alleging that the Montgomery County Council erred in the following respects: (1) in failing to give consideration to the testimony of Mrs. Watwood; (2) in refusing to order a rehearing of the testimony of Mrs. Watwood in accordance with the previous request made by the applicants; (3) in "upholding [the Master Plan] as a lawful zoning designation, without any legislative enactment"; (4) in finding that the neighborhood of the subject property had not assumed a commercial character; (5) in concluding that the subject property should remain classified R-R, in spite of the state of transition from residential to commercial; (6) in failing to find on the record that the subject prop-

erty was not reasonably suited for any of the permitted R-R uses; (7) in relying upon the applicants' failure "to negative the possibility of obtaining a special exception use permission" as a basis for its decision; (8) in relying upon the lack of demonstrated public need for commercial facilities as a basis for denial of the application; (9) in passing its Resolution which was unconstitutional for lack of "essential uniformity of suitability for use between the subject property and all other property in the R-R classification"; (10) in not concluding that the R-R zoning constituted an unconstitutional confiscation of the Kacurs' property; and (11) in concluding that its decision would "aid in the accomplishment of a coordinated, comprehensive, adjusted, and systematic development" of the Regional District.

The prayers for relief, stated in the alternative, were for: (1) a trial *de novo* upon the application; (2) a complete rehearing of Mrs. Watwood's testimony; (3) permission to submit briefs and arguments upon the Petition for Appeal; and (4) reversal of the Council's Resolution and an order granting the rezoning to C-1.

The answer of the Montgomery County Council, filed on January 3, 1968, denied all of the allegations of the Kacurs' petition, and affirmatively averred that the action of the Council was valid and legal, based entirely upon the record, and at least fairly debatable. It prayed that the court dismiss the appeal.

After holding a hearing on April 25, 1968, Judge Pugh filed an opinion and order on May 23, 1968, reversing the decision of the County Council. In his opinion, he characterized the question before him as "[W]hether or not a property owner whose lands are not suitable for residential development under the R-R zone, should be required to make application for special exception in order to obtain the maximum use of said lands." Then, after finding that the subject property could not be used for residential development, he concluded that to require the property owners to use the property only on the basis of first obtaining a special exception amounted to confiscation and was discriminatory. Therefore, he ruled that the County Council had been arbitrary in refusing to classify the property commercial, and ordered a reversal.

From this order, the appellant, the Montgomery County Council, has taken a timely appeal.

The single question presented to us is whether the District Council acted arbitrarily and abused its authority in declining to rezone the property. We find that it did not and, accordingly, we will reverse the order of the Circuit Court and reinstate the order of the District Council.

The appellees' challenge to the decision of the Council was based entirely on the alleged confiscation of their property by the existing R-R zone, which it was claimed amounted to a mistake in original zoning.

The legal principles governing the taking of private property without payment of just compensation by zoning action have been set out many times before by this Court. As Judge Oppenheimer stated in *Mayor and City Council of Baltimore v. Borinsky*, 239 Md. 611, 622, 212 A. 2d 508, 514 (1965) :

> "The legal principles whose application determines whether or not the restrictions imposed by the zoning action on the property involved are an unconstitutional taking are well established. If the owner affirmatively demonstrates that the legislative or administrative determination deprives him of all beneficial use of the property, the action will be held unconstitutional. But the restrictions imposed must be such that the property cannot be used for any purpose. It is not enough for the property owners to show that the zoning action results in substantial loss or hardship."

See also *Skipjack Cove Marina, Inc. v. County Comm'rs for Cecil County*, 252 Md. 440, 250 A. 2d 261 (1969) ; *Franklin Construction Co. v. Welch*, 251 Md. 715, 248 A. 2d 639 (1968).

Thus, the burden was on the appellees to prove that the existing zoning deprived them of *all* reasonable use of their property, and it is incumbent upon them to show that the property could not be used for *any* of the permitted uses in the existing zone. *Tauber v. Montgomery County Council*, 244 Md. 332, 337, 223 A. 2d 615, 618 (1966). We find that they have not sustained this heavy burden.

The court below assumed that the Kacurs had proved that

the permitted uses under the R-R zone were inappropriate for the subject property, and, accordingly, stated that the issue of confiscation turned on whether or not the property owners could be required to make application for the special exception uses, before it could be concluded that all reasonable use had been denied. We do not reach this question, as the record does not show an unconstitutional taking, even if we were to assume, *arguendo,* that the property owners cannot be required to exhaust the possibility of special exception uses in order to show a confiscation of their property.

The primary use in an R-R zone is, of course, residential. The subject property is presently improved by a single-family dwelling house, and while there is evidence in the record that there may be more profitable uses for the property, we find no evidence that the house is not now occupied nor that it is unsuitable for continued residential occupation in the future. In addition, the appellees' own witness, Mrs. Watwood, testified that the property could be developed with 2 or 3 new homes in the $25,000 to $30,000 range, and while she stated that they "would be slow to sell at that price," there was no evidence that it would be impossible to sell such houses.

It appears that viewing this testimony in a light most favorable to the appellees, it can be concluded, at best, that the property is not suitable for highly priced residential homes such as are common in the Potomac area, but in no way can the testimony of Mrs. Watwood be interpreted to support a conclusion that the property is *totally* unsuitable for residential use. This is insufficient to show an unconstitutional confiscation. As we pointed out in *County Council for Montgomery Co. v. Gendleman,* 227 Md. 491, 177 A. 2d 687 (1962), the fact that the highest and best use for a piece of property is something other than what the present zoning allows is, by itself, irrelevant; a showing of an unconstitutional taking requires that *all* reasonable use of the property be excluded.

We find equally unpersuasive Mrs. Watwood's other testimony that no one was interested in buying the subject property for residential use during the year and one-half while she was offering it for sale at a price admittedly consistent only with a commercial use. There was no testimony in regard to

whether anyone was or might have been interested in residential development of the land had it been available at a price consistent with the going price for residential land. Therefore, we cannot treat this evidence as having any bearing on the issue of an unconstitutional taking. Similarly, the inference that the Kacurs will be unable to recapture their investment in the subject property which may be drawn from the testimony of Mrs. Watwood, as well as from much of the other evidence in the record is also irrelevant. Mr. Watwood testified that the price which the Kacurs paid for the property was "substantially in excess of the going rate for residential lots in the Potomac area", but was consistent with the going price for commercial property. It is well settled that the purpose of the rezoning authority of the County Council is not to guarantee the purchaser of a piece of property a use that will justify his investment. As Judge Finan stated, for the Court, in *Helfrich v. Mongelli*, 248 Md. 498, 237 A. 2d 454 (1968) :

> "[T]his Court has repeatedly held that the fact that rezoning may result in the realization of greater profits from use of the land or that the hardship may follow from the retention of the existing classification is not sufficient justification for rezoning. (Citations omitted.)" (248 Md. at 502-03, 237 A. 2d at 457.)

See generally *Hewitt v. County Comm'rs of Baltimore County*, 220 Md. 48, 61, 151 A. 2d 144, 151 (1959) ; *Marino v. Mayor and City Council of Baltimore*, 215 Md. 206, 218, 137 A. 2d 198, 202 (1957). Likewise, a property owner may not *require* the Council to grant a rezoning, through the due process clauses of the State and Federal Constitutions, by creating a hardship situation of his own making in which he cannot but lose money. Cf. *Salisbury Board of Zoning Appeals v. Bounds*, 240 Md. 547, 214 A. 2d 810 (1965).

Mrs. Watwood's testimony established that at the time of the sale, she was well aware of the existing R-R zoning as well as the new Master Plan's recommendation for continuation of that classification, and the inference that the Kacurs were also aware of the existing zoning is inescapable. This factor, taken together with the testimony that the purchase price was well in

excess of the normal price for residential land, makes it apparent that the Kacurs bought the property with the intention of applying for rezoning. Under these circumstances, they may not now claim a hardship. See *Pem Construction Co. v. Mayor and City Council of Baltimore,* 233 Md. 372, 196 A. 2d 879 (1964) ; *Mayor and City Council of Baltimore v. Sapero,* 230 Md. 291, 186 A. 2d 884 (1962) ; *Gleason v. Keswick Improvement Ass'n,* 197 Md. 46, 78 A. 2d 164 (1951).

Similarly, the testimony of the appellees' other witness, Mr. D'Aprile, seems to be of the same character as that of Mrs. Watwood, i.e., that the property is not suitable for very expensive houses such as are found in most of the Potomac area. In no way can his testimony be read to support a conclusion that the present zoning results in a confiscation of the owners' property.

Nor have the appellees shown that the property may not be used for *any,* much less *all,* of the permitted uses in the R-R zone. As we noted above, the Hearing Examiner's opinion sets out a number of uses permitted in the R-R zone, and the appellees have made no attempt, either before the Hearing Examiner or before the Council, to show that all of these uses are inappropriate. On the contrary, as we have already found that the appellees have not proved that the property may not be used for residential purposes, it would appear that at least some of the residential accessory uses may be appropriate, e.g., professional office in a one-family dwelling, or rental of guest rooms. However, we need not speculate on what uses may be appropriate, as it is clear that the burden was on the appellees to show the inappropriateness of *all of the uses,* and this they failed to do.

As we find no valid constitutional objection to the decision of the Council, it is clear that its denial must be upheld. The test where the zoning authority has declined to rezone is whether the decision was "fairly debtable", and thus was not arbitrary, capricious and unreasonable. *Montgomery County Council v. Shiental,* 249 Md. 194, 238 A. 2d 912 (1968) ; *Mayor and City Council of Greenbelt v. Board of County Comm'rs of Prince George's County,* 247 Md. 670, 234 A. 2d 140 (1967) ; *Agneslane, Inc. v. Lucas,* 247 Md. 612, 233 A. 2d 757 (1967).

In the first mentioned case, we indicated that the reasoned

report of the technical staff, by itself, "constituted probative evidence for the denial of the application for reclassification and was sufficient to make the issue fairly debatable." *Montgomery County Council v. Shiental, supra,* 249 Md. at 199, 238 A. 2d at 915. In the present case, there is, in addition to a "reasoned report of the technical staff," a plethora of evidence which makes the Council's decision, at the least, fairly debatable.

The appellees contend that the County Council in approving the Master Plan, created a new zoning classification, because in that plan, the single-family area covering the subject property had the additional notation, "Suitable for Special Exception Uses". In our opinion, no new zoning classification was created; the added language was merely a recommendation by the planning authorities that the County Council give special consideration to granting special exceptions for the subject property when applied for by the owners. The owners cannot complain of this additional language as it was for their benefit.

> *Order of the Circuit Court for Montgomery County of May 23, 1968 reversed and order of October 31, 1967 of the County Council denying the requested rezoning reinstated, the appellant to pay the costs.*