HARDESTY ET AL. *v.* DUNPHY ET AL.

[No. 97, September Term, 1970.]

*Decided November 18, 1970.*

The cause was argued before HAMMOND, C. J., and MC-WILLIAMS, FINAN, SMITH and DIGGES, JJ.

*William E. Kirk,* with whom were *Townshend & Kirk* on the brief, for appellants.

*Ronald M. Naditch* for appellees.

DIGGES, J., delivered the opinion of the Court.

This attempt to obtain spot zoning for a local shopping center in a rural-residential area comes to us in a familiar setting with familiar arguments. The appellant Hardesty is in the process of developing a 100 acre resi-

dential subdivision near Davidsonville in a section of Anne Arundel County that has been zoned and has remained predominantly agricultural since 1952. Of this, he set aside a 4.38 acre tract facing on Maryland Route 214 for future use, partially because of its topography and partially because its location next to a tavern and across the road from a barbecue pit (both nonconforming uses) made it undesirable for the erection of $30,000 to $50,-000 homes. Although there was a general store and a part-time barber shop (nonconforming uses) one half mile away at the intersection of Routes 214 and 424, Mr. Hardesty felt that the presence of these facilities would not impede his application for commercial rezoning and the erection of a small shopping center, composed of a real estate office, antique shop, beauty salon, food market and a barber shop—all for the convenience of the neighborhood.

Mr. Hardesty's arguments before the Planning and Zoning office (which denied his application), before the Board of Zoning Appeals (which granted it), and before the Circuit Court for Anne Arundel County (which reversed the Appeals Board) were based on substantial change in the character of the neighborhood and a need for such facilities. In particular the appellant attempted to show that since 1952 the population in the three mile area surrounding the subject property had increased 100%, with a current population of 500 homes. This had been substantially precipitated by the opening of the Davidsonville or Route 424 interchange of the John Hanson Highway, the main route between Washington and Annapolis. There was also anticipation of future change. The Appeals Board was impressed with the "continuing residential growth" of the region, taking "cognizance of the areas already subdivided in the neighborhood, and the purchase of the large tract by the School Board." Hardesty himself had only completed six of eighty-two projected homes, while two other large nearby tracts, one a massive 2000 acre subdivision, had been earmarked for development.

Finally, there was conflicting evidence of a local need for the proposed facilities. This amounted to a demonstration that comparable and existing shopping centers were six and eight miles from Davidsonville and the nearest community shopping center projected by the county's master plan will be "three miles distant from the site," to use appellant's words. The Board of Appeals found that the Davidsonville general store was only used for emergency purposes and some witnesses claimed that its daytime-only hours were inconvenient. Mr. Hardesty points out that "if the Davidsonville store, which is non-conforming, should be destroyed by fire, there would be no service at all and no zoning on which to construct a new facility." While the first half of his trenchant observation may be true, the trial court's observation that there were at least three partially used heavy commercial zones within three miles of the subject property removes some force from this argument. One of these was at the intersection of Riva Road and Route 214, within 1000 feet of the appellant's proposed commercial area.

The thorough opinion of the trial court (Childs, J.) completely rejected the appellant's argument that there was a change in the character of the neighborhood, and we see no need to elaborate at great length on the proposition that "a mere increase in population does not prove a change in the character of the neighborhood to justify another type of rezoning." *County Comm'rs v. Fairwinds,* 230 Md. 569, 572, 187 A. 2d 845 (1963), which was recently reaffirmed in *Himmelheber v. Charnock,* 258 Md. 636, 267 A. 2d 179 (1970), *Chapman v. Montgomery County Council,* 259 Md. 641, 649, 271 A. 2d 156 (1970), and *Cabin John Limited Partnership v. Montgomery County Council,* 259 Md. 661, 672-73, 271 A. 2d 174 (1970), the latter two opinions having been filed simultaneously with this case.

Except where allowed by statute or ordinance or where it is a genuine factor in changes to sub-categories of residential use, *Chapman, supra* at 648, we are of the opin-

.ion that the effects of population increase per se should normally be "corrected by a resurvey of the land use map." *Zinn v. Board of Zoning Appeals,* 207 Md. 355, 114 A. 2d 614 (1955).

Another familiar argument the appellant places before us is the prospect of future development. We find that this is the least substantial aspect of his application. The cases following in the wake of *Jobar Corp. v. Rodgers Forge,* 236 Md. 106, 202 A. 2d 612 (1964), have developed two criteria for the consideration of the impact of future changes in rezoning application. The first prerequisite is that the anticipated change must be "reasonably probable of fruition in the foreseeable future." *Jobar, supra* at 112. The second prerequisite is that the imminent change must be relevant, that is, it must be such that if it had occurred in the past it would have justified rezoning, *e.g., Brenbrook Constr. Co. v. Dahne,* 254 Md. 443, 449, 255 A. 2d 32 (1969). See particularly Judge Hammond's dissenting opinion in *Jobar,* 236 Md. at 130. Thus, if past population increase will not justify individual rezoning, it is less than persuasive to assert that anticipated population increase will do so. The projected residential subdivisions in this case, including the 2000 acre tract, are not reasonably probable of fruition in the foreseeable future, and even if they were, they could not serve as a basis for piecemeal reclassification. The recent purchase of the large tract by the School Board, which so impressed the Board of Appeals, also fails to meet the two requirements of the *Jobar* argument, for even if there was some substantial indication a school was actually going up, a school is that type of use which is permitted in residential zones in the Anne Arundel County Code, §§ 33-38, 33-46 (1952). See also *Baker v. Montgomery County,* 241 Md. 178, 215 A. 2d 831 (1966). As for the suggestion that access to the John Hanson Highway will further open up the area, it is true that the presence of new roads can have a substantial impact on the character of a neighborhood, *Finney v. Halle,* 241 Md. 224, 216 A. 2d 530 (1966), *Beth Tfiloh v. Blum,* 242 Md. 84, 218

A. 2d 29 (1966), but here all evidence indicates no impact except a continuing pattern of further increase in residential population.

Another of appellant's arguments which is no stranger to this Court is that there was a present need in the residential community for his proposed facilities. He claims that since the Board has found such need, its action was justified and did not amount to illegal spot zoning. He relies heavily on our recent decision in *Miller v. Abrahams*, 257 Md. 126, 262 A. 2d 524 (1970) to support this proposition. We believe that our opinion in that case, as expressed by Judge McWilliams at pages 129-30, not only contains the best statement of appellant's position but also the best refutation of it.

> "We have held, of course, that 'a mere increase in population does not prove a change in the character of the neighborhood to justify another type of zoning.' *County Commissioners v. Fairwinds Beach Club*, 230 Md. 569, 572 (1963). By way of riposte [the appellant] quotes from the opinion of Judge Barnes, who spoke for the Court in *Bosley v. Hospital for Consumptives*, 246 Md. 197, 204 (1967). The excerpt is as follows:
>
>> 'The substantial development of housing units and the concurrent growth in population could reasonably lead to *need* for additional commercial zoning in the area to supply the wants of the increased population.' (Emphasis ours.)
>
> "He buttresses the excerpt quoted above with a quotation from *Cassel v. City of Baltimore*, 195 Md. 348, 355-56 (1950):
>
>> 'On the other hand, it has been decided that a use permitted in a small area, which is not inconsistent with the use to which the larger surrounding area is restricted, although it may be different from that use, is not "spot zoning" when it does not conflict with the

comprehensive plan but is in harmony with an orderly growth of a new use for property in the locality. The courts have accordingly upheld the creation of small districts within a residential district for use of grocery stores, drug stores and barber shops, and even gasoline filling stations, for the accommodation and convenience of the residents of the residential district. [Citing cases.]'

"Counsel should know that the quotation from *Cassel* is mere comment, well below the level of *obiter dictum.* Indeed we held, in *Cassel,* that the reclassification of a single property so as to allow its use as a funeral home in a residential area was 'spot zoning,' especially since there was no showing of a public need for it. *See Minor v. Shifflett,* 252 Md. 158 (1969). In *Bosley* the construction of Goucher Boulevard and Prince Road, the locations of which had not been determined when the zoning map was adopted, effected a dramatic change in the character of the neighborhood; moreover, there was proof of a need for additional commercial zoning. In the record before us the 'evidence' of public need is little more than wishful thinking and, in our judgment, too thin to make the issue fairly debatable. In fact, it was conceded that there are 'extensive shopping facilities of all kinds on Liberty Road [2¼ minutes away] and on Reisterstown Road [3 to 3¾ minutes away].' Much was made of the notion that residents of the area would be able to *walk* to Abrahams' shopping center. The short and melancholy answer to this is the common knowledge that it is a poor and disadvantaged citizen indeed who walks to a shopping center in this day and age."

A few points should be mentioned in applying *Miller* to this case. The neighborhood in a semirural or exurban

area is larger and more fluid than in a city or suburban area. Moreover, although this Court has never dwelt at length on the abstract concept of need, we have pointed to a more precise definition of what is meant by the word "need" in the local shopping center case. In *Zinn v. Board of Zoning Appeals,* 207 Md. 355, 362, 114 A. 2d 614 (1955) Judge Henderson, speaking for the Court, said: ". . . nor was there any convincing testimony of a need, *in the sense of inaccessibility to other shopping centers or stores within a reasonable distance, as in Wakefield v. Kraft,* 202 Md. 136." (Emphasis added.) See also *Eckes v. Board of Zoning Appeals,* 209 Md. 432, 440-41, 121 A. 2d 249 (1956). The existence in this case of shopping centers six and eight miles away (no more than 10 to 15 minutes travel time) in a rural setting suggests neither inaccessibility nor unreasonable distance. This observation is doubly fortified by the presence of three unused commercial zones within the three mile circle, one of which is 1000 feet from the subject property. See *Messenger v. Board of County Commissioners,* 259 Md. 693, 271 A. 2d 166 (1970).

Even if we accept the Board's implicit conclusion that the distance to the presently existing shopping centers is unreasonable, in the passage quoted from *Miller v. Abrahams, supra,* it is abundantly clear that *Cassel,* the seminal case in this area, does not represent the proposition that need can serve as a substitute for change or mistake. In all individual applications for reclassification, there must first be a finding of substantial change in the character of the neighborhood or mistake in the comprehensive plan. Yet this finding alone "merely *permits* the legislative body to grant the requested rezoning but does not *require* it to do so." *Messenger v. Board of County Commissioners, supra* at 704. It is then that the factor of need can play a significant role, for if there is no need whatsoever the rezoning might be arbitrary and capricious, see *Wakefield v. Kraft,* 202 Md. 136, 157, 96 A. 2d 27 (1953) (Sobeloff, C. J., dissenting) or, as is nor-

726

mally the case, the factor of need would be a "debatable question" to be weighed with other elements in determining the desirability of the rezoning. If there has not been a legally sufficient change or mistake, regional comprehensive rezoning is the only method available to provide for the needs of a nascent residential community.

*Order affirmed. Costs to be paid by the appellants.*