## MAYOR AND COUNCIL OF ROCKVILLE *v.* HENLEY

[No. 198, September Term, 1972.]

*Decided March 29, 1973.*

470

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Roger W. Titus, City Attorney,* and *Vincent E. Ferretti, Jr., Assistant City Attorney,* for appellant.

*Joseph A. Lynott, Jr.,* for appellee.

DIGGES, J., delivered the opinion of the Court.

The appellee, Robert J. Henley, is the owner of two lots and the contract purchaser of the three adjoining lots located at the southwest corner of Stonestreet and Frederick Avenues within the corporate limits of the City of Rockville, Maryland. He filed an application with the appellant, the Mayor and Council of Rockville, requesting a rezoning of these lots so as to change their classification from R-60 (single family residential) to I-1 (light industrial). Following a public hearing, the appellant, on 23 November 1971, denied this request after concluding that there had been neither a mistake in the comprehensive zoning nor sufficient change in the character of the neighborhood to permit such a reclassification. In addition, appellant rejected the suggestion that the present classification was unconstitutionally confiscatory so as to deprive Henley of all reasonable use of his property. On appeal to the Circuit Court for Montgomery County, Judge Shearin found the issues of change and mistake to be fairly debatable and therefore declined to upset the decision of the appellant on those grounds. However, he did reverse the denial of rezoning after concluding that the present classification was confiscatory. This appeal followed. As to the issues of change and mistake, we will affirm the trial judge's decision since we agree with him that they were fairly debatable. However, we are compelled to reverse his final order as we find error in his conclusion that appellee was denied all reasonable use of his property.

The subjects of this litigation are five lots which, at least since the adoption of the comprehensive zoning plan in 1957, have been classified R-60. They are bounded on the west by the Washington to Chicago main track line of the B. & O. Railroad; on the east by Stonestreet Avenue with residences along its far side zoned R-60; on the north by Frederick Avenue which separates the subject site from two warehouses situated on realty zoned I-2 (industrial), an apartment house built on land zoned I-2, with a residence on the corner zoned R-75 (residen-

472

tial); and on the south by two homes and some vacant lots, all zoned R-60, which are located between appellee's property and a large tract zoned R-60 but used since 1959 by the Montgomery County Board of Education for warehousing, open storage of materials, school buses, and trucks. This "quasi industrial" use is permitted for a publicly owned or operated facility in a residential zone.

Beyond the immediate vicinity, on the east side of the railroad tracks, is a residential community which extends for several blocks with small well kept homes. This entire expanse is zoned R-60 with the exception of those properties mentioned above, a group of apartments one block east of the subject site, and two small lots sandwiched between residences and situated across Stonestreet Avenue from the School Board, which in 1962 were rezoned from R-60 to I-1 as a result of this Court's decision in *England v. Rockville*, 230 Md. 43, 185 A. 2d 378 (1962). These two lots remained undeveloped at the time of the hearing in this case and, in fact, an application for reclassification to R-75 was then pending. On the west side of the tracks is land zoned for industrial and commercial use. While the area east of the railroad may not qualify for the appellation of Camelot, it has the appearance of a suburban residential neighborhood interspersed with minimal storage facilities and proximate to some commercial and light industrial development.

The law which controls our decision in this case has been discussed by this Court in numerous cases. We have made it abundantly clear that:

> "there is a strong presumption of the correctness of original zoning and comprehensive rezoning and that to sustain a piecemeal change therefrom there must be produced strong evidence of mistake in the original zoning or else evidence of a change in conditions resulting in a substantial change in the character of the neighborhood." *Heller v. Prince George's Co.*, 264 Md. 410, 412, 286 A. 2d 772 (1972).

And the burden of proving change or mistake which rests on the applicant is quite onerous. In demonstrating change in the neighborhood, the applicant must show:

"(a) what area reasonably constituted the 'neighborhood' of the subject property, (b) the changes which have occurred in that neighborhood since the comprehensive rezoning and (c) that these changes resulted in a change in the character of the neighborhood." *Montgomery v. Bd. of Co. Comm'rs for Prince George's Co.*, 256 Md. 597, 261 A. 2d 447 (1970). *See also Clayman v. Prince George's Co.*, 266 Md. 409, 292 A. 2d 689 (1972) ; *Heller v. Prince George's Co., supra.*

But, such proof of change merely permits the legislative body to grant the requested rezoning; it does not compel it to do so. *Hardesty v. Dunphy*, 259 Md. 718, 271 A. 2d 152 (1970) ; *Messenger v. Bd. of Co. Comm'rs of Prince George's Co.*, 259 Md. 693, 271 A. 2d 166 (1970). Finally, we have further stated that where there is sufficient evidence before the legislative body to render the issues of change or mistake "fairly debatable", a court may not substitute its judgment for that of the legislative agency. *Smith v. Co. Comm'rs of Howard Co.*, 252 Md. 280, 249 A. 2d 708 (1969).

Concerning the question of mistake, we agree with Judge Shearin that the evidence before the Mayor and Council was not substantial enough even to make that issue fairly debatable. The only testimony on the question was the bald assertion by appellee's expert witness, Mr. Dieudonne, a qualified realtor and appraiser, who simply responded to the question "do you think the present zoning is the correct zoning, R-60" by saying "No, sir, I think that is wrong." And then, when asked what would be the proper classification, answered, "I-1, and I think that would stabilize that area and I don't believe there would be an infiltration into the Lincoln Park sector of residential homes." These naked declara-

tions, unsubstantiated by facts, are insufficient to overcome the presumption of correctness which attaches with the adoption of a comprehensive zoning plan. *Smith v. Co. Comm'rs of Howard Co.,* 252 Md. 280, 249 A. 2d 708 (1969).

As we turn to the question of whether there is a change in the character of the neighborhood, we preface our discussion with a comment that the record pertaining to this issue leaves much to be desired. But, from what we can ascertain from a confused batch of schedules and plats, frequently unlabeled, undated, and uncoded, most of the changes listed and relied on by appellee are several blocks south of the subject site or on the wrong side of the railroad tracks. There are, however, a few changes in the immediate vicinity. First there is a parcel located at the northwest corner of North Stonestreet and Frederick Avenues, formerly zoned C-2 (general commercial), which was, in the early 1960's, partly rezoned R-75 and partly I-2. However, the I-2 portion of this property is now used for residential purposes since the Lenmore Apartments are located there. A second change occurred when two adjoining 50 foot lots south of, and on the opposite side of North Stonestreet Avenue from the subject site, were reclassified from R-60 to I-1 as a result of this Court's decision in *England v. Rockville,* 230 Md. 43, 185 A. 2d 378 (1962). But, as previously noted, at the time of the hearing in this case, those lots remained undeveloped and, in fact, an application for reclassification back to residential use was then pending. Finally, though no change in the zoning has occurred, or is in fact required, the School Board property has expanded northward so that their storage and parking facilities have crept closer to the appellee's property.

In our opinion, when all the evidence presented in support of appellee's contention concerning change in the character of the neighborhood is considered, the question becomes, from the appellee's standpoint, at best fairly debatable. In the first place, it is questionable whether the appellee has satisfied his burden to delineate the

boundaries of the neighborhood. *Montgomery v. Bd. of Co. Comm'rs for Prince George's Co., supra,* 256 Md. at 602. He seems to suggest that the neighborhood is comprised of that area which is bounded by Stonestreet Avenue on the east side, the outer edge of the commercial development across the railroad tracks on the west, extends south for several blocks past the Board of Education buildings, and to the north for at least a block. On the other hand, although the Mayor and Council made no definitive finding as to the boundaries of the neighborhood, they apparently accepted the testimony of the Director of Planning for the City of Rockville as to the boundaries. The director thought that the area consisted of some 150 acres lying east of the railroad, extending to the southern border of the Board of Education property, and including what is generally referred to as the Lincoln Park section of Rockville. Using this definition, it appears that if there has been change in the neighborhood, it has been in the direction of an increase in residential use.

The area described by the director is zoned almost entirely residential. The present portrait of this neighborhood sharply contrasts with that painted for this Court in *England v. Rockville, supra.* The 8½% increase in population in recent years, the construction of 40 new residences, and the demolition of four or more buildings which could have been described as eyesores lays to rest the 1962 prediction of doom forecast in *England* for the residential character of this area. The community's revitalization, aided by a 1.5 million dollar federal grant for public improvements, has effectively turned the tide and, although at one time this area may have flirted with industrial development, it is now a viable residential community. These factors justify our conclusion, already expressed, that whether there was a change in the character of the neighborhood is at best fairly debatable. We mention, however, that if the boundaries of the neighborhood are those which appellee seems to allege, the changes in that area documented in the testimony

would still only render the issue fairly debatable. Furthermore, even if Henley had convinced all concerned that there had in fact been a change in the character of the neighborhood, this would merely permit, but not compel, the legislative body to grant his application. *Hardesty v. Dunphy*, 259 Md. 718, 271 A. 2d 152 (1970) ; *Messenger v. Bd. of Co. Comm'rs of Prince George's Co.*, 259 Md. 693, 271 A. 2d 166 (1970).

Henley makes one further argument in support of his application for rezoning. He contends that to deny his requests would unconstitutionally deprive him of all reasonable use of his property. The trial judge agreed, reversed the action of the Mayor and Council and ordered the rezoning.

That a landowner would be the recipient of greater profits should his realty be rezoned is not determinative of whether he is denied all reasonable use of his property. And the fact that the highest and best use for a piece of property is something other than that which the present zoning allows is, by itself, irrelevant. *Plant v. Bd. of Co. Comm'rs of Prince George's Co.*, 262 Md. 120, 277 A. 2d 77 (1971) ; *Montgomery Co. Council v. Kacur*, 253 Md. 220, 252 A. 2d 832 (1969). In apparent recognition of this law, appellee does not attempt to justify his application for reclassification on the basis that rezoned his land could be more profitably developed. However, he does speak in vague generalities about the economic infeasibility of developing his land for any use permitted in a R-60 zone. It is clear that such general claims are insufficient to prove that there is no reasonable use for property under a particular zoning. *Pahl v. County Bd. of Appeals*, 237 Md. 294, 206 A. 2d 245 (1965) ; *DePaul v. Board*, 237 Md. 221, 205 A. 2d 805 (1965). In *Baltimore City v. Borinsky*, 239 Md. 611, 212 A. 2d 508 (1965), where rezoning was sought for a similar purpose to the one here, we held that expert testimony alleging that the construction of residences rather than a warehouse would be economic suicide, when not supported by substantial factual evidence, was insufficient to compel

rezoning. Here, the vague and unsupported expert testimony, however emphatic, does not take the place of the necessary factual support that would prove an applicant is denied all reasonable use of his property. Appellee's experts merely invoked economic infeasibility as some form of magic incantation in hope of transposing one zoning use to another. Such general statements and use of magic words are ineffective. In order to obtain rezoning on the basis of an unconstitutional confiscation an applicant must show that he has been deprived of *all* reasonable use of his property and that it could not be used for *any* of the permitted uses in the existing zone. *Cabin John Ltd. v. Montgomery Co.*, 259 Md. 661, 271 A. 2d 174 (1970) ; *Montgomery Co. Council v. Kacur, supra; Baltimore City v. Borinsky, supra.* Although the appellee's expert witnesses discounted all permitted uses in an R-60 zone with sweeping generalizations, they failed to support their opinion with any specific evidence. On the other hand, various plats were received showing that five to eight residences could be constructed on the appellee's lots and they would have neighbors residing next door as well as across both streets. Since Henley has failed to meet his burden of showing that the present zoning classification denies him all reasonable use of his property, we conclude that the trial judge erred on this issue, and will reverse his decision.

> *O r d e r reversed; case remanded for the passage of an order affirming the action of the Mayor and Council of Rockville.*
> *Costs to be paid by the appellee.*