VALENZIA *v.* ZONING BOARD OF HOWARD COUNTY

[No. 87, September Term, 1973.]

*Decided December 4, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Charles E. Wehland* and *Orrin J. Brown, III,* for appellant.

*R. Russell Sadler, Assistant County Solicitor,* with whom was *Robert E. Wieder, Deputy County Solicitor,* on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

Our present concern is a three-quarter acre lot (the property) in the town of Elkridge, once a prosperous port of entry. Looking at it today, however, one finds it hard to believe that eighteenth century planters were able to load their tobacco aboard the seagoing sailing ships docked along its waterfront. The property is located at the northeastern corner of Main Street and Furnace Road. It is also the northernmost parcel of a 35± acre enclave of R-12 (Single Family Residential) land bounded, on the northeast, by a strip of M-2 (Heavy Industrial) land lying between the enclave and the Patapsco River, on the southeast by an M-2 strip lying to the northwest of Race Road, on the southwest by another M-2 strip lying athwart the Baltimore and Ohio Railroad right-of-way, and on the northwest by an M-1 (Light Industrial) strip lying athwart the Washington Boulevard (U.S. Rte 1). A thin wedge of B-2 (Heavy Commercial) separates the M-1 strip from the enclave.

Prior to May 1957 the zoning classification of the property

was R (Residential) but in that month its owners succeeded in having it reclassified to B-1 (Light Commercial). In May 1966 it was sold to Myers Equipment Company. The next owner was Ingersoll-Rand Equipment Company. The appellant, a general contractor, acquired it from Ingersoll-Rand in April 1971.

While there are nonconforming uses, some of quite long standing, within the enclave there have been but three changes in zoning classifications. The first was the 1957 reclassification of the property from R to B-1. The second was the comprehensive rezoning of January 1964, in which the entire enclave, except the property, was reclassified from R-20 (Residential, $^1/_2$ acre lots) to R-12. The property was left in the B-1 classification. The third (Case #474) was the reclassification from R-12 to M-2, in November 1967, of a lot (0.696 acres) on the southwest side of Furnace Avenue, approximately opposite the property. The decision of the zoning authority, at that time the Board of County Commissioners of Howard County, in Case #474, was based on what appears to have been a finding that there had been error in not placing that property, in 1964, in the M-2 classification. The Board noted there was no opposition to the petition and that a nonconforming use of long standing was being carried on there.

On 25 February 1972 the appellant filed a petition seeking the reclassification of the property from B-1 to B-2. He alleged "a mistake in the original zoning which deprived . . . [the] property of its highest and best use, as well as . . . any reasonable use." He went on to allege that "it was a mistake in zoning to treat this corner [the property] as B-1 which deprives the . . . property of substantial utility." In his petition there appear the statements that "the property is served by public water; but not by public sewer" and that, if reclassified, "the property will be used as an office building" by the appellant.

The Planning Board, on 5 April, recommended denial of appellant's petition. The findings and conclusions of the Board are as follows:

"Findings:
1. The petitioner's request is not in accordance

with the General Plan of Howard County, adopted on December 6, 1971, by the County Council.

2. The General Plan shows the area as stable and proposes no change.

3. Public water is available to the subject property.

4. Public sewer is not available to the subject property.

5. The Department of Environmental Health states that unless sewage disposal meets the Health Department requirements, the change in zoning should be denied.

6. The petitioner stated that the extended use for this parcel if rezoned to B-2 would be an office building. However, the petitioner does not need to rezone to have an office building as it is permitted in a B-1 zone under Section 11.016.

7. There is, in Case No. 289, B-2 zoned land to the north of Main Street in close proximity to the subject property. Not all of this land is in use.

Conclusions:

1. The petitioner's request is not in accordance with the General Plan of Howard County adopted on December 6, 1971, by the County Council.

2. The present B-1 zoning on the subject property would allow the erection of an office building, as proposed by the petitioner.

3. There is unused B-2 zoned land within the area."

At the hearing before the Zoning Board on 11 April the appellant disclosed, for the first time, that he intended to use the property not only "as an office building" but also for the storage of construction materials for which purpose he proposed to erect a warehouse. Also he testified that there is a public sewer in the bed of Main Street "within 25 feet of the property line." Francis Harman, whose qualifications as

an expert real estate witness were unchallenged, said the sewer was installed in early 1966. Asked if he thought the retention of the property in the B-1 classification, when the area was comprehensively rezoned in 1964, was a mistake, he was unable (or unwilling) to say more than that he did not feel it was "compatible with the [abutting] M-2 zone" and that B-1 is "entirely too restrictive on the property *making it not as desirable as it should be.*" (Emphasis added.)

The Zoning Board denied appellant's petition on 11 July making findings as follows:

"1. That the Petitioner's request is not in accordance with the General Plan of Howard County adopted on December 6, 1971.

"2. Public water is available to the subject property.

"3. That the Board adopts the findings and conclusions of the Planning Board."

The appellant's appeal to the Circuit Court for Howard County was dismissed by the trial judge, Mayfield, J., on 30 March 1973. Judge Mayfield thought the record "almost devoid of any evidence to support [the] contention" that there had been a mistake in the original zoning. He said also that he found "little in the proceedings before the Board" to support the contention that there had been "a change in the character of the neighborhood" sufficient to justify a rezoning nor did he find any evidence to indicate that the failure to rezone amounts to a "denial of all reasonable use of the property."

Appellant's argument in respect of mistake seems to us to be based on a feeble premise. He says because the Commissioners, in 1967, thought the earlier R-12 classification of the 0.696 acre lot on the other side of Furnace Avenue (Case #474) had been a mistake that it was as much a mistake to place his property in the B-1 classification in 1957 and to leave it in that classification in 1964. As noted early on there was no opposition in #474 and, as we see it, it is unlikely the decision of the Commissioners

would have survived an appeal. He cites another reclassification to M-1 in 1959; that property, however, is on the west side of Route 1, outside of the enclave, and has the railroad as its eastern boundary. But even if those two reclassifications were, in fact, untainted and supportable it is a palpable non sequitur to say that classifying the property B-1 instead of B-2 was a mistake in 1957. Appellant was the first to conceive that notion and its conception, we note, did not take place until a few months after he took title to the property. Harman said the property had been virtually unsalable for two years but this seems a bit inane when one considers that he succeeded in selling it to the appellant.

If any mistakes were made in dealing with the enclave it seems to us more likely that the reclassifications of the 0.696 acre lot from R-12 to M-2 and of the property from R to B-1 were the mistakes but, putting them aside, we see evidence of a firm intention to maintain the enclave as a residential area despite the fact that some nonconforming uses still survive. Whether such an intention connotes wisdom is not our concern. If the proper authorities want it that way then, in these circumstances, they have the right and the power to make it so.

With somewhat monotonous regularity in recent years we have said, in respect of allegations of mistake, that there is a strong presumption of the correctness of original zoning and comprehensive rezoning and that to sustain a piecemeal change therefrom there must be produced strong evidence of mistake. *Mayor and Council of Rockville v. Henley*, 268 Md. 469, 302 A. 2d 45 (1973). And at least as frequently we have said the burden of proof facing one seeking a zoning reclassification is quite onerous. *Rockville, supra; Wells v. Pierpont*, 253 Md. 554, 253 A. 2d 749 (1969). While Judge Mayfield may have put it a little too high when he said "the record is almost devoid of any evidence to support that contention," the evidence produced by the appellant could hardly be said to be strong evidence and it was patently insufficient to compel reclassification. Moreover, the rezoning of a neighboring property does not require the

rezoning of the applicant's property. *See Montgomery County v. Pleasants*, 266 Md. 462, 295 A. 2d 216 (1972); *Plant v. Board of County Comm'rs for Prince George's County*, 262 Md. 120, 277 A. 2d 77 (1971).

Judge Mayfield found "little in the proceedings before the Board to support" the contention that there had been "a substantial change in the character of the neighborhood." We agree. Appellant made no effort to define the neighborhood but we think it is obvious that the enclave is the neighborhood. *Clayman v. Prince George's County*, 266 Md. 409, 292 A. 2d 689 (1972). The only significant change since the comprehensive rezoning of 1964 seems to have been the reclassification of the 0.696 acre lot but it is clear, we think, that it had little, if any, impact on the character of the neighborhood — the same nonconforming use was continued; the General Plan of 1971 categorizes the area as stable. In any event, whatever there may have been in the way of change might, perhaps, have permitted a reclassification but it certainly would not have compelled it. *Rockville, supra; Hardesty v. Dunphy*, 259 Md. 718, 271 A. 2d 152 (1970); *Messenger v. Board of County Comm'rs of Prince George's County*, 259 Md. 693, 271 A. 2d 166 (1970).

Appellant contends finally that the denial of his petition amounts to impermissible confiscation since it deprives him of all reasonable use of the property. Judge Mayfield found no support in the record for such a contention. We agree. The regulations permit, in the B-1 District, such uses as:

"Art, trade and business schools
 Personal and household service shops
 Offices, professional and business
 Parking lots or garages
 Restaurants and lunch rooms
 Bakery
 Banks and Savings and Loan Associations
 Boarding houses
 Community meeting halls
 Clubs and lodges"

That appellant claims the highest and best use of the

property is something other than the uses permitted in the B-1 District is irrelevant. In *Rockville, supra,* Judge Digges, for the Court, said:

> "Here, the vague and unsupported expert testimony, however emphatic, does not take the place of the necessary factual support that would prove an applicant is denied all reasonable use of his property. . . . In order to obtain rezoning on the basis of an unconstitutional confiscation an applicant must show that he has been deprived of *all* reasonable use of his property and that it could not be used for *any* of the permitted uses in the existing zone. *Cabin John Ltd. v. Montgomery Co.,* 259 Md. 661, 271 A. 2d 174 (1970); *Montgomery Co. Council v. Kacur, supra* [253 Md. 220, 252 A. 2d 832 (1969)]; *Baltimore City v. Borinsky, supra* [239 Md. 611, 212 A. 2d 508 (1965)]." 268 Md. at 477.

Appellant is critical of the findings of the Planning Board because the Zoning Board adopted its findings and conclusions. He points to finding No. 4 and says it is incorrect and, to be sure, so it is. Finding No. 5, in the circumstances of course, loses its significance. These seem to us not to be crucial and in mitigation of the Planning Board's gaffe perhaps it should be noted that in his petition the appellant alleged that the property was *not* "served" by a public sewer. The Board may have assumed, carelessly to be sure, that he knew what he was talking about.

The Zoning Board's order of 11 July 1972 and Judge Mayfield's affirmance thereof on 31 March 1973 both antedated our decision in *Pistorio v. Zoning Board of Howard County,* 268 Md. 558, 302 A. 2d 614 (5 April 1973). While we shall affirm the decision of Judge Mayfield it should not be supposed that by so doing we have attenuated what we said in *Pistorio* or that we have in any way receded from the position we took in that case. The action of the Zoning Board here might be said to be on the ragged edge but, in the circumstances, we do not think anything would be gained by remanding the case for further consideration.

In short, we take a rather dim view of the intellectually lazy device of routinely adopting the findings and conclusions of the Planning Board. Section 16.206 of the Howard County Code requires the *Zoning Board* to make findings of fact and conclusions of law.

*Order affirmed.*
*Appellant to pay the costs.*