BIRCKHEAD ET AL. *v.* BOARD OF COUNTY
COMMISSIONERS FOR PRINCE GEORGE'S
COUNTY, ETC. ET AL.

[No. 232, September Term, 1970.]

*Decided February 3, 1971.*

*Motion for rehearing filed March 2, 1971; denied
March 3, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, SINGLEY, SMITH and DIGGES, JJ.

*William J. Avrutis* and *James F. Vance,* with whom was *Henry Louis Judy* on the brief, for appellants.

*Barry S. Cramp, Associate County Attorney,* for appellee Board of County Commissioners for Prince George's County. *Russell W. Shipley,* with whom were *Kahler, Shipley & O'Malley* on the brief, for appellee Jesse Corporation.

HAMMOND, C. J., delivered the opinion of the Court.

The appellants are protestants against the rezoning of some 27 acres of land in Prince George's County from Rural Residential to General Commercial, a rezoning suggested by the general plan for the area, approved both by the technical staff of the Planning Commission and the Commission, granted by the District Council and affirmed by the Circuit Court, McCullough, J. To bolster the weakness of their case on the merits they seek to overturn the rezoning, not only on the usual grounds, but also on the claim of irregularities and denials mounting up to the deprivation of the constitutional right to procedural due process.

The comprehensive zoning was enacted in 1957. The property owner makes no claim of original error, relying solely on substantial change in the character of the neighborhood. The protestants sought to confine significant nearby rezonings to those occuring after 1965 when the original zoning maps were readopted, but it is clear that the legislative action in 1965 neither was intended to be nor was a comprehensive rezoning but was only housekeeping to straighten out clerical and mechanical errors that had accumulated over the years. The controlling date is 1957.

The property lies on the westerly side of Indian Head

Highway immediately south of its intersection with Livingston Road about four miles south of the Capital Beltway and is the site of a drive-in movie theatre, the smallest, we are told, in the County. The theatre is a non-conforming use. The owner wishes to enlarge the theatre and build an indoor theatre and, perhaps, some stores. Much of the property is vacant and wooded, as is the adjacent land to the south, southwest and northwest. Vacant partly wooded land lies to the north and west. Nearby commercial uses, rezoned since 1957, include a real estate office 150 feet to the north, a lumber company and boat repair shop 750 feet away and, somewhat closer, a large restaurant. Within little more than half a mile are other lots rezoned to commercial but not yet developed. Within a radius of a mile fourteen rezonings mostly to commercial, including a shopping center in operation, have come about since 1957.

The zoning and planning expert who testified for the property owner—his sound qualifications were graciously and generously conceded by the appellants—testified to these changes to commercial uses and said they were significant in evidencing a substantial change in the character of the neighborhood. He also testified that recently constructed sewerage facilities, including various sewage disposal plants, one of which was Piscataway, permitted intensified use in the area and that existing roads widened since 1957 were fully adequate to service the property and that there was easy access along 800 feet of road frontage. The opposition evidence was that the area still seemed rural, that further commercialization would increase traffic dangerously, particularly as far as school children were concerned, and add problems of dirt and dust. Another witness feared the "domino theory" would operate if this rezoning were granted.

The Planning Commission and its technical staff relied on the South Potomac Sector Plan which was adopted by the Commission in 1967 and by the Council in 1968, which puts a symbol on the subject property proposing " 'a semi-metropolitan use or facility' for commercial pur-

poses." This was one reason for their recommendation of approval of the requested rezoning. The other was that "the [subject] property is located at a major highway intersection and access to this proposed commercial area would be efficient and adequate to serve the volumes of vehicular traffic generated by the use."

The hearing before the Council was on the instant application and four other similar applications. It began on July 3, 1968, and ended on July 5. When all witnesses pro and con had been fully heard and fully cross-examined, the Council recessed the hearing until September 4 in order to obtain official information on access to Indian Head Highway and on the newly built Piscataway sewage treatment plant which in part would service the area. The Chairman said:

> "The [Council] will recess these cases in order to receive additional information from State Roads or the Federal Roads, from the Washington Suburban Sanitary Commission, and any other technical information which is necessary. Of course, it will not receive any additional information from either applicants or opposition, from this point on."
>
> "[C]opies of the reports that this [Council] receives and considers will be mailed to both the applicants and the opposition.
>
> "And they will be given an opportunity to submit written rebuttal evidence, if they so desire."
>
> "Did you hear that, Mr. Avrutis [of counsel for the protestants]? You [the protestants] will have the opportunity to submit written rebuttal,"

to which Mr. Avrutis replied: "Yes."

The State Roads Commission chairman wrote the Council that the federal government, which built and enlarged Indian Head Highway, would permit access to it from State roads. On July 10 a representative of the Washington Suburban Sanitary Commission appeared before the Council to describe the Piscataway plant and its opera-

tions. One of the protestants, the president of a neighborhood association, also spoke to the Council telling them of his visit to Piscataway and his opinion of its overloading and its defects and inefficiencies. He submitted pictures in support of his claims. A transcript of these proceedings was sent to counsel for the protestants who submitted to the Council (which received and considered it as an opposition exhibit) a lengthy and detailed written rebuttal of the version of the Sanitary Commission's agent, as well as an affirmative argument supported by exhibits.[1] On November 6 the Council, being persuaded it had received all the light it needed or could procure, took the five cases under advisement. On February 25, 1969 the Council approved the instant application and rejected the other four. After a timely appeal in the case before us, the Circuit Court remanded the case to the Council to enable it to make the findings of fact called for by the holding in *Montgomery v. Bd. of Co. Comm'rs,* 256 Md. 597. On December 9 the Council filed its findings of fact as follows:

1. An expert testified that the C-2 classification is the proper use for the property.

2. Since the adoption of the map there has been an extension of public water and sewerage to the vicinity of the property.

3. There have been a substantial number of rezonings to commercial uses since the adoption of the map "in the immediate area of the subject property," many of which have been put to use in the last several years.

4. The property could be adequately served by the existing roads.

The Council's conclusion was: "There has been shown substantial evidence of changed conditions within the area of the subject property which justify the granting

---

1. It appears from a statement released by the State Department of Health that the early operating deficiencies of Piscataway flowed from the problems of breaking in a new complex facility with an untrained staff plus overloading. The first problem had been alleviated by experience and the addition of facilities and the latter had been cured by pumping excess sewage to another plant.

of the application." On April 1, 1970 Judge McCullough affirmed the Council.

We can see no basis for a holding that the Council's action was arbitrary, capricious or illegal for certainly a reasoning mind could reasonably conclude on the record as a whole not only that there had been a substantial change in the character of the neighborhood from rural residential to commercial, and indeed that all the significant changes have been to commercial, but also that whether the sewerage facilities and the roads were or were not adequate to support the rezoning was at the least a fairly debatable question.

We see no constitutional affront to the protestants in the manner in which the Council received, considered and decided the case. We agree with Judge McCullough when he said:

"The Court finds that [appellants] have failed to show that they were denied the right to cross-examine witnesses on whose testimony the Findings of Fact and Conclusions were based, or that the District Council's decision was based on evidence not in the record [because some members of the Council visited the sewerage disposal plant in August 1968]. The conclusions reached by the members of the District Council are clearly supportable in the hearing transcript."

An applicant for a rezoning and one who opposes the application are equally entitled to the opportunity for cross-examination and both sides had that opportunity and availed themselves of it here. At the conclusion on July 5 of the adversary contest on the facts to be adjudicated, the applicant had almost demonstrated that there had been a substantial change to commercial in the character of the neighborhood and had offered probative evidence, essentially unimpaired after full cross-examination by the protestants, sufficient to make fairly debatable the question of the adequacy of the roads and the sewerage facilities in relation to their property.

The Council at that point chose to take the opportunity to obtain detailed official information as to the Piscataway plant and Indian Head Highway, largely because as to the first, it had received complaints and wished to formulate a general policy as to limiting building in the area, and as to the second, because there had been some questions as to the right of access all along Indian Head Highway. There has never been any real doubt that the subject property now could be sewered or that it had ample access to entirely adequate roads. The protestants were told of the procedure that would be followed in obtaining the information wanted and were kept fully aware of all that the Council received—essentially in its legislative capacity—and took the opportunity offered them to rebut that information and present their own views, conclusions and arguments. Ordinarily, the opportunity of denial and rebuttal is not a substitute for cross-examination but in view of the peripheral and oblique nature and type of the information sought and received, we find no deprivation of fundamental procedural rights in the Council's limiting the protestants to written rebuttal on the legislative aspects of the case. We think the "basic rules of fairness" as to parties before the Council were observed, *Dal Maso v. Board,* 238 Md. 333, 337, and *Neuman v. City of Baltimore,* 251 Md. 92, 97, and that there were preserved "the fundamentals applicable to the decision of adjudicative facts." *Gorin v. Board of Co. Comm'rs,* 244 Md. 106, 110. See also *Maryland Fire Underwriters Rating Bureau v. Insurance Commissioner of Maryland,* 260 Md. 258, 272 A. 2d 24 (1971).

> *Order affirmed, appellants' costs to be paid by appellants and appellees' costs to be paid by appellees.*