# MONTGOMERY ET AL. v. BOARD OF COUNTY COMMISSIONERS FOR PRINCE GEORGE'S COUNTY, MARYLAND ET AL.

[No. 479, September Term, 1970.]

*Decided June 30, 1971.*

*Motion for rehearing filed July 8, 1971; denied and opinion modified September 14, 1971.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*James F. Vance,* with whom was *Donald B. W. Messenger* on the brief, for appellants.

*Jess J. Smith, Jr., Associate County Attorney,* with whom was *Walter H. Maloney, Jr., County Attorney,* on the brief, for the Board of County Commissioners for Prince George's County, part of appellees. Submitted on brief by *Marion E. West* for Samuel E. Hungerford et al., other appellees.

FINAN, J., delivered the opinion of the Court.

This is the second appeal to this Court involving a rezoning of a 2.2 acre parcel of land in Prince George's County from Rural Residential to commercial usage. Such rezoning has been suggested by the Master Plan for the area, recommended by the Prince George's County Planning Board and its Technical Staff, granted by the Board of County Commissioners for Prince George's County sitting as a District Council (the District Council), and twice affirmed by the Circuit Court for Prince George's County. We reversed the decision of the lower court on the prior appeal. This time we affirm.

The subject property is owned by Samuel E. Hungerford, Holden A. Hungerford, and Samuel E. Hungerford, Jr., and is located on the west side of Oxon Hill Road in Prince George's County, approximately 200 feet south of Arthur Drive and 700 feet north or Notley Road. The original comprehensive zoning for the area in which the property is located occurred in 1957, at which time the tract in question was zoned Rural Residential. It is an irregularly shaped parcel of land, approximately one-half acre of which has been utilized for about 24 years

as a combination gasoline service station, garage, machine shop, and automobile parts jobbing business. Since the comprehensive zoning in 1957, it has existed as a legal nonconforming use. The property immediately surrounding the subject tract consists primarily of single family dwellings or cleared land, with the exception of the abutting property to the north, which is occupied by the Wisor Plumbing and Heating Corporation, another nonconforming use.

The appellants here, as in the prior appeal, are nearby property owners protesting the rezoning. In the prior appeal, we reversed the order of the Circuit Court for Prince George's County which had affirmed the rezoning by the District Council. Our reversal was based on the fact that the District Council had failed to make the findings of basic facts or written conclusions required by § 59-104 of the Code of Public Local Laws of Prince George's County, and we remanded the case for such findings. *Montgomery v. Board of County Commissioners for Prince George's County,* 256 Md. 597, 601-602, 604-605, 261 A. 2d 447 (1970).

On remand, the District Council made certain findings of fact (to be discussed later) and concluded that there had been a change in the rural character of the neighborhood [1] which justified a rezoning of the southern portion of the subject tract from Rural Residential to General Commercial and the northern portion of the tract from Rural Residential to Commercial-Office Building, thereby creating a buffer zone between the General Commercial and the existing Rural Residential zones. On October 27, 1970, the Circuit Court for Prince George's County (Meloy, J.) found that the "cumulative effect of

---

**1.** The District Council also concluded that "there may well have been a mistake in the original zoning of the subject property which zoning failed to recognize the need for and the legitimacy of the commercial character of the subject property in 1957." This contention was not made by the Hungerfords in requesting the rezoning, and was not relied on by the lower court in its opinion. Neither was it pressed on appeal. We do not rely on it in reaching our decision.

4

the changes" noted by the District Council created a debatable issue as to the change in character of the neighborhood and therefore affirmed the grant of rezoning. This appeal followed.

Our decisions this term in *Hardesty v. Dunphy*, 259 Md. 718, 271 A. 2d 152 (1970) ; *Messenger v. Board of County Commissioners for Prince George's County*, 259 Md. 693, 271 A. 2d 166 (1970) ; *Cabin John Limited Partnership v. Montgomery County Council*, 259 Md. 661, 271 A. 2d 174 (1970), and *Chapman v. Montgomery County Council*, 259 Md. 641, 271 A. 2d 156 (1970) (all decided the same day) are generally dispositive of the matters before us in this appeal. More particularly, our recent decision in *Birckhead v. Board of County Commissioners for Prince George's County*, 260 Md. 594, 273 A. 2d 133 (1971), which presented an almost identical factual setting to the case at bar, answers the necessary questions.

As this Court has frequently stated, the primary issue to be decided in an appeal such as this is whether or not there are sufficient facts in the record to render the conclusion that there has been either a mistake in the original zoning of the subject property or a substantial change in the character of the neighborhood fairly debatable. The District Council found that there had been a substantial change in the character of the neighborhood, and the lower court sustained that finding. If there is evidence in the record to support such a conclusion, thereby rendering the issue fairly debatable, this Court will not substitute its judgment. *Messenger v. Board of County Commissioners, supra,* at 703; *Cabin John v. Montgomery County, supra,* at 673. See also *Birckhead v. Board of County Commissioners, supra,* at 599. Cf. *Chapman v. Montgomery County, supra,* at 649.

In order to determine whether or not there has been a substantial change in the character of the neighborhood, one must first determine what constitutes the neighborhood. Of course, the burden of proof in this regard rests

with those seeking the rezoning. *Messenger v. Board of County Commissioners, supra,* at 706; *Montgomery v. Board of County Commissioners, supra,* at 602. The appellants, who opposed the rezoning, contended in the lower court that the neighborhood should be confined to the geographical area that is "within sight." On appeal to this Court, they contend that the neighborhood should be confined to the immediate area of the subject property.

The concept of a neighborhood is a flexible one, and will vary according to the geographical location involved. However, it is clear that in a rural or semirural area, the neighborhood is going to be larger and more fluid than in a city or suburban area. *Hardesty v. Dunphy, supra,* at 724-725. The District Council and the lower court correctly found the neighborhood of the subject property to be as described by Mr. George Price, who represented the Oxon Hill Vista Citizens' Association and who testified *in opposition to* the proposed rezoning. Nonetheless, he described the neighborhood as follows:

> "For the present, and for some time to come, our area is one community. Failing some definite demarcation line such as a major traffic artery, I believe it should be considered as one neighborhood and one community with the words being synonymous.
> Since we are one neighborhood, one community, one area, bounded on the north by the Beltway, on the west by the [Potomac] river, on the east by Indian Head Highway, and on the south by Broad Creek and Henson Creek, I would like to discuss this area."

The neighborhood thus described consists of Neighborhood Structures 1 through 8 as shown on the map of the Maryland-National Capital Park and Planning Commission, which was introduced at the District Council hearing as an exhibit. The subject tract is located within

Neighborhood Structure 5, located in the approximate center of the larger neighborhood.

The District Council found that within the somewhat immediate vicinity of the subject tract (i.e., within the confines of Neighborhood Structure 5) a three acre tract approximately 1200 feet south of the subject property had been rezoned from residential to industrial usage in 1958 and was being used as a lumber yard, and that a three acre tract approximately ¼ of a mile south of the subject property was also rezoned from residential to commercial in 1958 and was being used as a nursery. Both of these tracts had been former non-conforming uses.

Within the confines of the larger neighborhood (i.e., Neighborhood Structures 1-8) the District Council found that there were "many rezoning and road changes," to wit: about ¾ of a mile southeast of the subject property ten small tracts at the intersection of Livingston Road and Indian Head Highway had been rezoned from residential to commercial; a large tract of land about 4/5 of a mile from the subject property had been rezoned from residential to multi-family and housed the Wilson Tower Apartments; Indian Head Highway to the east had been dualized and Oxon Hill Road, on which the subject property is located, had been improved to within 1500 feet south of the subject tract, and widening of the road immediately adjacent to the subject property was contemplated in the Master Plan. Also, the District Council noted that the Piscataway sewage disposal plant had been constructed and sewer lines had been extended into the area of the subject property, that there had been many residential changes to higher density, demonstrating an increase in population, and that, although located "some distance from the subject property" (about 1 ½ miles north), there had been other substantial changes, such as the construction of the Capital Beltway and the Anacostia Freeway.

The findings made by the District Council, based pri-

marily on the uncontradicted testimony of Mr. Dewey M. Freeman, the Hungerfords' expert, who, at the time of the hearing had been a real estate broker, appraiser, and consultant for 27 years, justify the conclusion that the question of whether there has been a substantial change in the character of the neighborhood since the original zoning in 1957, is at least fairly debatable.

In *Chapman* we noted that proposed highway improvements would be pertinent to the issue of change only if "reasonably probable of fruition in the foreseeable future." *Chapman v. Montgomery County, supra,* at 649, and cases cited therein. That would, of course, largely negate the impact on the issue of change of the proposed widening of Oxon Hill Road adjacent to the subject property as contemplated in the Master Plan. However, in *Beth Tfiloh v. Blum,* 242 Md. 84, 89-90, 218 A. 2d 29 (1966) and *Finney v. Halle,* 241 Md. 224, 237-238, 239, 216 A. 2d 530 (1966), we recognized the substantial impact which the completed construction of the Baltimore Beltway and the extension of sewer and water facilities could and did have on the surrounding area, thereby making the issue of substantial change in the character of the neighborhood fairly debatable.

In *Birckhead, supra,* we were concerned with a rezoning from Rural Residential to General Commercial of property on which a non-conforming use existed. Chief Judge Hammond, writing for the Court, after noting the changes which had occurred within the immediate vicinity of the property in question, the various rezonings to commercial usage which had occurred "within a radius of a mile" of the subject property, and the existence of the Piscataway sewerage facility, stated:

> "We can see no basis for a holding that the Council's action was arbitrary, capricious or illegal for certainly a reasoning mind could reasonably conclude on the record as a whole * * * that there had been a substantial change in the character of the neighborhood from rural residential to commercial * * *." 260 Md. 599.

8

Given the changes present within the defined neighborhood in the instant case, coupled with the construction of the Capital Beltway, the Anacostia Freeway, and the Piscataway sewerage facility in the surrounding area, at least that much can be said here.

It should also be noted that the Master Plan for the South Potomac Sector approved by the District Council in November, 1967, recommended commercial zoning for the subject property. Additionally, in 1968, the Prince George's County Planning Board of the Maryland-National Capital Park and Planning Commission recommended to the District Council commercial zoning for the property after having received a favorable report from its Technical Staff in January, 1968.

And, while a Master Plan is not the legal equivalent of a zoning map, if there are elements of substantial change in the character of the neighborhood present, recommendations found in a Master Plan are a valid factor to be considered. *Chapman v. Montgomery County, supra,* at 643. Moreover, we would note that this Court has held that the recommendation of the Technical Staff, when accompanied with a reasoned report, constitutes probative evidence in a hearing for an application of reclassification of zoning and is sufficient to make the issue fairly debatable. *Montgomery County v. Shiental,* 249 Md. 194, 199, 238 A. 2d 912 (1968). In that case the Technical Staff recommended that the requested rezoning be denied. See also *Sampson Brothers v. Board of County Commissioners,* 240 Md. 116, 119, 213 A. 2d 289 (1965). Cf. *Messenger v. Board of County Commissioners, supra,* at 704; *Habliston v. City of Salisbury,* 258 Md. 350, 361-362, 265 A. 2d 885 (1970).

There remains only the appellants' contention that the rezoning effected within the immediate vicinity of the subject property, namely, the lumber yard and the nursery, were not any evidence of a change in the character of the neighborhood because they both were non-conforming uses existing in their present form prior to the orig-

inal zoning. They contend that what they term "paper changes" concerning the nursery and the lumber yard do not justify the rezoning of the subject property. Aside from the fact that the rezonings of the nursery and the lumber yard were, as we have previously pointed out, only a part of the changes which led the District Council and the lower court to conclude that there had been a change in the character of the neighborhood, it should be stated that rezonings from Rural Residential to commercial and/or industrial usage must certainly contribute to a change in the character of the neighborhood, regardless of whether or not there are any physical changes in the non-conforming uses themselves. Simply stated, the neighborhood surrounding the Hungerfords' property is no longer strictly rural residential, and the lumber yard and nursery are no longer non-conforming uses designed to be phased out with the passage of time. Indeed, given their present classifications, these tracts could support any commercial or industrial usage permitted by the applicable statute.

Viewing the record as a whole, the issue of whether or not there has been a substantial change in the character of the neighborhood is debatable to a reasonable man. Conversely, it cannot be said that the District Council acted arbitrarily, capriciously, or illegally, in granting the requested rezoning. Therefore, in accord with the well-settled law in this State, we will not disturb the zoning authority's decision.

*Judgment affirmed, appellants to pay costs.*